Terry Eugene FOSTER, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–93–01117–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Aug. 17, 1995.

Discretionary Review Refused
Nov. 15, 1995.

Kenneth E. Goode, Houston, for appellant.

John B. Holmes, Houston, for appellee.

Before MURPHY, C.J., and ANDERSON and YATES, JJ.

## OPINION

ANDERSON, Justice.

Terry Eugene Foster entered a plea of not guilty to the offense of capital murder. TEX. PENAL CODE ANN. § 19.03 (Vernon Supp. 1994).[1] The jury found him guilty and sentenced him to confinement for life in the Texas Department of Criminal Justice—Institutional Division. TEX. PENAL CODE ANN. § 12.31(a) (Vernon Supp.1994). Foster brings three points of error complaining about the admission of expert testimony. We affirm.

The facts, viewed in the light most favorable to the verdict, are that Martin Bessinger worked at the Siesta Liquor Store which had a check cashing room, and Martin periodically made trips to the bank to deposit checks and withdraw cash. Each Friday, Martin would make as many as eight or nine trips to the bank, and would return with $10,000.00 on each trip. He would be accompanied by a security guard.

On the morning of March 6, 1992, Terry Eugene Foster went to Calvin Wayne Russell's home. He met with Russell, Calvin Moore, and a man whose first name was Rayfield. The four men then left in two cars. Foster and Rayfield rode in a pickup truck, Moore and Russell in Russell's blue Suburban. Moore stopped and acquired a gray Mazda truck. Rayfield later stopped and acquired a gray Chevrolet Caprice. At this point the four men were in four vehicles. Russell then parked his Suburban in a Finger's Furniture Company parking lot on Cullen and the Gulf Freeway. All four men were armed: Foster had a 9 millimeter semi-automatic pistol, Moore a 9 millimeter pistol, Russell an Uzi 9 millimeter pistol with a clip, and Rayfield an Uzi.

Foster drove to the Siesta Liquor Store, parked the truck, and walked to the bus stop to watch for a signal. Rayfield drove around in the vicinity of the liquor store.

Anthony Giddens was employed as a security guard for Young Security. He was assigned to the Siesta Liquor Store on March 6, 1992. He wore a security uniform and carried a gun. Between noon and 12:30 p.m. he accompanied Martin on a trip to Navigation Bank.

Foster saw Moore give a signal that Martin was leaving the liquor store. Moore, driving the Mazda truck, and Rayfield, driving the Caprice, both followed Martin and Giddens to the Navigation Bank.

Martin made a deposit and withdrew $10,000.00 in cash. The money was placed inside a brown paper sack. Martin and Giddens drove back in the direction of the Siesta Liquor Store. Giddens was seated in the right front passenger seat and had the brown paper sack between his legs.

Russell and Foster were in the other pickup truck driving towards the bank. They saw Martin and Giddens coming towards them. Martin's car passed them. Russell turned and pulled in behind Martin and Giddens. Moore, traveling ahead of Martin and Giddens, stopped for the light at the intersection of Ernestine and Leeland. Martin and Giddens stopped behind Moore. Rayfield, driving the Caprice hit Martin's car from behind and caused it to strike the Mazda truck driven by Moore.

Russell, driving the other pickup truck with Foster in the bed, pulled up beside

---

1. The crime for which appellant was convicted was committed before September 1, 1994, the effective date of the revised penal code. *See* Acts 1993, 73rd Leg., Ch. 900, § 1.18(b). Therefore, all references to the penal code are to the code in effect at the time the crime was committed.

Martin and Giddens, who were jammed between Rayfield and Moore. Russell shot out the car's passenger side window. Both Giddens and Martin slumped over.

Foster jumped out of the bed of the pickup, reached inside Martin's car, and retrieved the money bag from the front floorboard. Rayfield reached inside and took Giddens' pistol. Martin then heard a few more shots.

Russell, Rayfield, Foster and Moore drove away in the pickup truck. When Martin realized they had left, he jumped out of his car. Steve Schifani, who was driving in the area, saw the offense and called 9–1–1 on his cellular phone. Schifani and other bystanders removed Giddens from the car and laid him on the pavement. Two women began CPR. Giddens was taken to Ben Taub hospital. He was pronounced dead at 12:35 p.m. He died from a gunshot wound which penetrated through his right arm and into his chest.

Meanwhile, Russell drove the Mazda truck to the Finger's Furniture Company parking lot. Russell exited the Mazda pickup truck and got into his Suburban. Moore then drove the Mazda to the rear of the furniture store and left it by some railroad tracks. Russell picked up Foster, Moore, and Rayfield in the Suburban. Appellant gave a voluntary written statement which detailed his participation in the commission of the robbery.

At trial, Sergeant W.T. Stephens of the Houston Police Department testified as an expert witness about a type of crime known as "jugging." Typically, the characteristics of a "jugging" include conducting surveillance of a location that is to be targeted, using a series of stolen cars, switching license plates on the stolen cars with plates from similar cars, dumping the stolen cars a short distance from the scene of the offense, and leaving in a vehicle which is not stolen and is parked nearby.

■ In three points of error Foster argues this testimony was inadmissible because (a) it was not relevant, (b) its probative value was outweighed by unfair prejudice, and (c) the evidence violates Rule 404(b) which excludes testimony regarding other wrongs, crimes or acts of a defendant. The determination of admissibility of evidence is within the sound discretion of the trial court and will not be reversed on appeal absent a clear abuse of discretion. *Coffin v. State*, 885 S.W.2d 140, 149 (Tex.Crim.App.1994). A trial court clearly abuses its discretion when its decision is so clearly wrong as to lie outside that zone within which reasonable persons might disagree. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App.1990) (op. on reh'g).

■ Rule 402 of the Texas Rules of Criminal Evidence permits the admission of evidence which is relevant. Rule 401 defines relevant evidence as evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. In order to be included in the expansive definition of relevant evidence, proffered evidence must have influence over a consequential fact, *i.e.*, any fact that is of consequence to the determination of the action. *Mayes v. State*, 816 S.W.2d 79, 84 (Tex.Cr.App.1991). In general, expert testimony is admissible if the witness is qualified as an expert, the testimony will assist the jury, and the probative value of the testimony is not substantially outweighed by its prejudicial effect. *Bethune v. State*, 821 S.W.2d 222, 225 (Tex.App.—Houston [14th Dist.] 1991, *aff'd*, 828 S.W.2d 14 (Tex.Crim.App.1992).

■ The testimony of Sergeant Stephens satisfies the definition of relevancy in Rule 401. It was material in that it supported the *modus operandi* of this type of crime—a well planned robbery involving surveillance of the victims, multiple stolen vehicles, coordination of the assault, and method of escape. He testified as an expert that the robbery in which appellant admitted he was involved was similar to other robberies in Houston called "juggings".[2] His testimony helped

---

2. Using his past experience and training in analyzing a robbery, Sergeant Stephens explained what the scenario of a jugging involved. The actions which he described, which may be con-

make the existence of this "fact"—a well-planned robbery—more probable, and it explained the rather complicated maneuvers of the co-actors with the various automobiles and license plates. *See Jefferson v. State,* 364 S.W.2d 227, 229 (Tex.Crim.App.1962) (Officer was possessed with more knowledge of the game of "policy" than the jurors in the case and his testimony could not have misled the jury to the prejudice of appellant); and *Miller v. State,* 874 S.W.2d 908, 914 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd) (witness' specialized knowledge of the rules of craps assisted the trier of fact to understand the evidence and to determine facts in issue).

Moreover, TEX.R.CRIM.EVID. 702 specifically envisions the admission of expert testimony when "specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue...."[3] We find the testimony of Sergeant Stephens relevant because his knowledge must—and did—assist the jury in evaluating and understanding facts and issues that are not within the jury's common experience. *Negrini v. State,* 853 S.W.2d 128, 131 (Tex.App.—Corpus Christi 1993, no pet.). We now turn to the issue of whether or not the testimony was so prejudicial as to outweigh its probative value.

■ The Texas Rules of Criminal Evidence favor the admission of relevant expert testimony, just as they favor evidence that is deemed relevant under Rule 401. *Ortiz v. State,* 834 S.W.2d 343, 347 (Tex.Crim.App. 1992). Rule 403 provides that the trial judge may exclude evidence if the probative value of the evidence is *substantially* outweighed by (1) the danger of unfair prejudice, confusion of issues, or misleading the jury, (2) considerations of undue delay, or (3) the needless presentation of cumulative evidence. TEX.R.CRIM.EVID. 403. Rule 403 requires the trial court to make a determination regarding the proposed exclusion of relevant evidence by balancing the probative value of the evidence against its prejudicial[4] and inflammatory effect. Rule 702 permits expert testimony to be admitted when scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue.

■ The admission of expert testimony is a decision for the court to decide and should only be overturned when the court abuses that discretion. *Ortiz,* 834 S.W.2d at 347. The determinations required by Rules 403 and 702 must be "resolved on a case-by-case basis," and "will depend on factors such as the content of the testimony, the context in which it is offered, and the state of the evidence." *Id.*

■ The State argues the expert testimony was properly admitted. We agree. This cause involved the execution of a planned ambush upon two individuals as they returned from the bank with $10,000.00. The offense featured many traits of a "jugging." Criminals are constantly developing and perfecting new methods by which to commit offenses. The public may not be aware of these new methods, or may have heard of them but be unfamiliar with the particulars. Sergeant Stephens' expert testimony was a direct attempt to assist the jury to understand the various pieces of evidence, the significance of each piece of evidence, and how these pieces all fit together to form the complete criminal episode. The probative value of Sergeant Stephens' testimony clearly and substantially outweighs the danger of unfair prejudice to appellant and may not be excluded under Rule 403. Consequently, we cannot say the trial court abused its discretion when it admitted the expert testimony in

---

fusing to an inexperienced person, were interpreted by the Officer to assist the trier of fact to understand and relate the events and actors involved. *See Williams v. State,* 826 S.W.2d 783, 785 (Tex.App.—Houston [14th Dist.] 1992, pet. ref'd).

**3.** An expert's testimony derives its value not from observation but from special knowledge and experience enabling him to draw inferences more

reliably than the jury can unaided. *Goff v. State,* 681 S.W.2d 619, 623 (Tex.App.—Houston [14th Dist.] 1983, *aff'd,* 720 S.W.2d 94 (Tex.Crim.App. 1986).

**4.** It must be remembered that virtually all evidence offered by a party to a lawsuit will be prejudicial to the opposing party.

order to educate the jury as to the common traits of this type of offense.[5]

Foster also argues this testimony violates Rule 404(b). That rule forbids admission of evidence of other crimes, wrongs, or acts to prove the character of a person in order to show that he acted in conformity with that character. Evidence of an extraneous offense must necessarily involve evidence of prior criminal conduct by the defendant. *McKay v. State,* 707 S.W.2d 23, 31–32 (Tex. Crim.App.1985), *cert. denied,* 479 U.S. 871, 107 S.Ct. 239, 93 L.Ed.2d 164 (1986). The testimony by Sergeant Stephens regarding the various aspects of a jugging did not include any evidence of prior criminal conduct of appellant or any evidence that appellant had ever committed a jugging or any other crimes, wrongs, or acts. Since that testimony did not establish any prior criminal conduct of appellant, no improper extraneous offense was admitted. We overrule all three points of error and we affirm the judgment of the trial court.

YATES, J., sitting for HUDSON, J.

---

5. Inasmuch as we conclude that the trial court did not commit error by admitting the expert testimony of Sergeant Stephens' regarding the elements of a "jugging", we need not conduct a harm analysis under T.R.A.P. rule 81(b)(2) as requested by appellant.