**Robert David WEBB, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 14–96–01453–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

April 15, 1999.

DeEdward J. Greer, Houston, for appellant.

Barbara Anne Drumheller, Houston, for appellee.

Panel consists of Justices SEARS, DRAUGHN, and CANNON.*

## O P I N I O N

ROSS A. SEARS, Justice (Assigned).

Appellant, Robert David Webb, appeals his conviction for retaliation. Following a jury trial, the court assessed his punishment at confinement for ten years in the Texas Department of Criminal Justice, Institutional Division. In eight points of error, Webb contends: (1) the statute for retaliation is unconstitutionally vague and overbroad; (2) the evidence was legally and factually insufficient to support the conviction; (3) the trial court erred in excluding business records from the Children's Protective Services Division ("CPS") of the Texas Department of Protective and Regulatory Services; and (4) appellant received ineffective assistance of counsel. We affirm.

Prior to the incident giving rise to the conviction in this matter, Webb was convicted of injury to a child and placed on probation by the 182nd District Court of Harris County, Texas. In the earlier action, Webb burned his youngest child, Phillip, on the arm with a match as a form of discipline. Phillip picked at the scab and, apparently, the wound began to look much worse than it had originally. Someone at Phillip's school noticed the injury, which led to Webb's prosecution and conviction for injury to a child. As one condition of probation, the 182nd District Court required Webb to attend family and parenting counseling.

Webb went to counseling sessions with Kathleen Guziak, a family and child therapist in Baytown, Texas. Ms. Guziak first met Webb on May 2, 1996, when Webb and his wife came to her office for the court-ordered counseling. Thereafter, Webb and his wife attended counseling sessions with Ms. Guziak for three weeks, then brought their two sons on the fourth week. The fifth session took place on June 14, 1996 in Ms. Guziak's office and Webb, his wife, and his two sons, Sean and Phillip, all attended. That session focused on a "contract" arrangement that the family instituted the prior week. Under the "contract," the boys were required to complete certain chores around the house and obey their parents in return for rewards. The older son, Sean, felt he had lived up to his end of the contract, but Webb expressed anger that Sean had postponed emptying the dishwasher one evening until the next morning. Webb stated he had been so angry that he contemplated going upstairs and waking the boy up at midnight because he had not yet emptied the dishwasher.

While Ms. Guziak and the others discussed this issue, the younger son, Phillip, sat quietly picking at a scab on his arm. Webb noticed this and called Phillip over to his chair. After Phillip walked over to his father, Webb pulled out a large hunting knife and angrily said, "Stop doing that, you better stop doing that or I'm going to cut your arm off." Ms. Guziak testified that she was shocked and that Phillip froze, saying nothing and doing nothing in response to his father's threat. Ms. Guziak also testified that Phillip looked terrified and defenseless and that she became very concerned and upset. Ms. Guziak told Webb to stop and asked him to put the knife down because he was scaring his son. Webb then put the knife away and told Phillip to go sit down.

Ms. Guziak told Webb that his actions were dangerous and unacceptable. She felt the children should leave the room, so she told them to go sit in the waiting room. She then told Webb and his wife that she was required under law to report the incident to CPS. Webb replied, "You better not, if you do I'm going to start an all out war with you and you'll be sorry." Ms.

* Senior Justices Ross A. Sears, Joe L. Draughn, and Bill Cannon sitting by assignment.

Guziak testified that she feared for her life because Webb had used the phrase "go to war" during past counseling sessions in the context of violence. Ms. Guziak left the room, went into the business area to get help, and called 911.

William Mitchell, the security guard at the office complex, heard the report that Webb had a knife. He went to Ms. Guziak's office, introduced himself to Webb, and asked Webb to step outside. According to Mitchell, Webb appeared to be very agitated. Mitchell tried to keep him calm, but Webb continued to attempt to go back into the Ms. Guziak's office. Finally, Webb pushed Mitchell and told him to get out of his face. Mitchell then subdued Webb and found a hunting knife with a seven-inch blade while searching him. Webb was arrested and charged with retaliation.

In his first four points of error, Webb argues that the retaliation statute is unconstitutional. Specifically, Webb contends the retaliation statute is vague on its face, overbroad on its face, unconstitutionally vague as applied to the facts of this case, and unconstitutionally overbroad as applied to the facts of this case under both the United States and Texas Constitutions.[1]

The retaliation statute at issue provides, in pertinent part:

(a) A person commits an offense if he intentionally or knowingly harms or threatens to harm another by an unlawful act:

(1) in retaliation for or on account of the service of another as a public servant, witness, prospective witness, informant, or a person who has reported or who the actor knows intends to report the occurrence of a crime; or

(2) to prevent or delay the service of another as a public servant, wit-

ness, prospective witness, informant, or a person who has reported or who the actor know intends to report the occurrence of a crime.

TEX. PENAL CODE ANN. § 36.06 (Vernon 1994).

In support of his constitutional arguments, Webb contends that section 36.06 produces a result contrary to the Penal Code's intent. The legislature provided that:

The rule that a penal statute is to be strictly construed does not apply to this code. The provisions of this code shall be construed according to the fair import of their terms, to promote justice and effect the objectives of the code.

*Id.* § 1.05(a) (Vernon 1994). Webb further notes that some of the legislative objectives of the Penal Code are:

The general purposes of this code are to establish a system of prohibitions, penalties, and correctional measures to deal with conduct that unjustifiably and inexcusably causes or threatens harm to those individual or public interests for which state protection is appropriate. To this end, the provisions of this code are intended, and shall be construed, to achieve the following objectives:

(1) To insure public safety;

(2) By definition and grading of all offenses to give fair warning of what is prohibited and the consequences of violation;

\* \* \*

(4) To safeguard conduct that is without guilt from condemnation as criminal. . . .

*Id.* § 1.02 (Vernon 1994).

On appeal, Webb contends that a father has been sentenced to a maximum penalty

---

1. We note that Webb failed to separate his federal constitutional issues from his state constitutional issues, thus advancing four multifarious points of error. The Texas Court of Criminal Appeals has held that this presents nothing for review. *See Morehead v. State,* 807 S.W.2d 577, 579 n. 1 (Tex.Crim. App.1991).

of ten years in prison for a remark made in defense of his family after being provoked by the complaining witness. As a result, Webb contends the criminal justice system failed because it allowed one person to place her interpretation on something that should be a private protected family matter that was thoroughly investigated by the CPS and found not to warrant further action. Webb further notes that the complaining witness' interpretation, which was not shared by CPS, was the sole factor that provoked the remark by Webb in the first place. He argues the clearly unintended result is that the complaining witness was allowed to be an accuser, judge, jury, and executioner. To illustrate this argument, Webb refers to the prosecutor's statement during voir dire which supposedly explained the prosecutor's interpretation of how the law of retaliation works. During an exchange with the venire, a prospective juror noted that people "spout off" when they are arrested and may not even mean it. The prosecutor responded that it is irrelevant whether they meant it, and then stated, "If you make the threat ... the game's over." Webb argues the prosecutor's suggested interpretation is incorrect and violates a fundamental concept of criminal law—to constitute a crime, the act, or *actus reus,* must be accompanied by a criminal mind, or *mens rea. See Cook v. State,* 884 S.W.2d 485, 487 (Tex.Crim.App.1994). Webb asserts that if we review this case with an eye towards implementing the express intent of the Penal Code, we must find the retaliation statute to be unconstitutional. We disagree.

■ The power to create and define criminal offenses and to establish and define defenses to criminal offenses rests within the sound discretion of the legislature. *See* TEX. CONST. art. III, § 1; *Willis v. State,* 790 S.W.2d 307, 314 (Tex.Crim. App.1990). Unless limited by constitutional provisions, the legislature has the inherent power to define and punish any act as a crime. *See Ex Parte Smith,* 441 S.W.2d 544, 547 (Tex.Crim.App.1969). Whenever a constitutional attack to a statute is presented, the appellate court should begin with the presumption that the statute is valid and that the legislature has not acted unreasonably or arbitrarily in enacting the statute. *See DeWillis v. State,* 951 S.W.2d 212, 214 (Tex.App.—Houston [14th Dist.] 1997, no pet.) (citing *Cotton v. State,* 686 S.W.2d 140, 144 (Tex.Crim.App.1985)). Appellant bears the burden to establish the statute's unconstitutionality. *See State v. Mendel,* 871 S.W.2d 906, 908 (Tex. App.—Houston [14th Dist.] 1994, no pet.). It is the duty of this court to uphold the statute if a reasonable construction of the statute will render it constitutional and carry out the legislative intent. *See Ely v. State,* 582 S.W.2d 416, 419 (Tex.Crim.App. 1979).

The thrust of Webb's argument is that the statute does not define the term "retaliation." Therefore, it must be given its ordinary meaning. *See Morrow v. State,* 862 S.W.2d 612, 614 (Tex.Crim.App.1993). According to Webb, "retaliation" has been defined as "an act of retaliating; the return of like for like; the doing of that to another which he has done to us; especially, the return of evil for evil; retribution; revenge." Webster's Third New Universal Unabridged Dictionary (3d ed.1993). Webb contends that retaliation can only occur, by definition, in response to something that has already been done. As such, Webb argues that it is impossible to retaliate for something which has not been done, but may be done in the future. Therefore, Webb argues it is impossible for him to retaliate against Ms. Guziak on account of her role as a prospective witness because she had not yet testified. We do not agree with Webb's logic.

This court has already found that section 36.06 is constitutional, noting that "on its face, [the statute] neither abridges constitutionally protected speech nor inhibits an individual's right to petition for redress of grievances." *Puckett v. State,* 801 S.W.2d 188, 193 (Tex.App.—Houston [14th

Dist.] 1990, pet. ref'd). In arriving at this conclusion, we noted that the State of Texas has a valid and substantial interest in protecting the integrity of its judicial system and in allowing public servants, witnesses, and prospective witnesses to perform their respective duties without interference from threats of physical violence. *See id.*

Webb contends that *Puckett* does not control, because the specific issues raised here were not before the court in *Puckett.* In *Puckett,* the defendant threatened a police officer who arrested him, telling him he would kill him when he got out of jail. *See id.* at 190. Here, appellant spoke angrily and menacingly to Ms. Guziak, telling her she would be sorry if she reported him to the authorities because he would start a war with her. The defendant in *Puckett* told the police officer he had killed others in the past. *See id.* at 194. Here, appellant defined the phrase "go to war" as meaning he would "fight to the death." Webb's wife also testified that Webb used the phrase "all out war" in the past to connote violence. The defendant in *Puckett* claimed he did not intend to carry out his threat, and Webb argues here that his statement was not intended as a threat of physical violence at all. We find *Puckett* to be dispositive on Webb's first four points of error.

■ Even if *Puckett* does not control, the statute still survives the facial challenges to overbreadth and vagueness. In such a challenge, our task is to determine whether the enactment reached a substantial amount of constitutionally protected conduct. *See Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 494, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982). If the statute does not, then the overbreadth challenge must fail. *See id.* The overbreadth doctrine is limited in context to First Amendment issues. *See Bynum v. State,* 767 S.W.2d 769, 772–73 (Tex.Crim.App.1989). We must then examine the facial vagueness challenge, and, if the enactment implicates no constitution-ally protected conduct, will uphold the challenge only if the enactment is impermissibly vague in all of its applications. *See id.*

■ Section 36.06 implicates no First Amendment protections. By its terms, the statute punishes only those individuals who intentionally or knowingly harm or threaten to harm another person by an unlawful act. *See* TEX. PENAL CODE ANN. § 36.06 (Vernon 1994). A threat is not protected speech. *See Watts v. United States,* 394 U.S. 705, 707–08, 89 S.Ct. 1399, 22 L.Ed.2d 664 (1969). The overbreadth doctrine is based on the principle that "a governmental purpose to control or prevent activities constitutionally subject to regulation may not be achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms." *Gholson v. State,* 667 S.W.2d 168, 172 (Tex.App.— Houston [14th Dist.] 1983, pet. ref'd). The statute punishes only threatening speech and does not reach a substantial amount of constitutionally protected conduct. *See Blanco v. State,* 761 S.W.2d 38, 40 (Tex. App.—Houston [14th Dist.] 1988, no pet.). Because section 36.06 regulates only threatening speech, it does not infringe into an area of constitutionally protected freedoms.

■ Webb told Ms. Guziak that he was going to start an all out war with her and that she would be sorry if she reported his conduct to the authorities. Ms Guziak testified, as did Webb's wife, that Webb had used that phrase in the past to refer to physical violence in the sense that he was willing to "fight to the death" if he was crossed. Webb had a large hunting knife on him at the time he made the statement. Despite Webb's arguments at trial, the language, viewed from either an objective or subjective perspective, constitutes the threat to inflict physical harm on Ms. Guziak. Further, the comment was not made in a public forum and did not deal with an issue of public concern. *See Puckett,* 801 S.W.2d at 194. We find the statute not to

be overbroad, either on its face or as applied. We overrule appellant's second and fourth points of error.

A vagueness challenge is applicable to all criminal laws, not merely those that regulate speech. *See Bynum,* 767 S.W.2d at 773. A statute which either forbids or requires an act in terms so vague that a person of common intelligence must guess as to the meaning and will differ as to the statute's application lacks the first essential of due process. A law must be sufficiently definite so that its terms and provisions may be known, understood, and applied or it is void and unenforceable. *See Cotton v. State,* 686 S.W.2d at 145. When a vagueness challenge involves First Amendment concerns, the statute may be held facially invalid even though it may not be unconstitutional as applied to the appellant's conduct. *See Gooding v. Wilson,* 405 U.S. 518, 521–22, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972). Where First Amendment freedoms are implicated, a law must be sufficiently definite to avoid chilling protected expression. *See Long v. State,* 931 S.W.2d 285, 287 (Tex. Crim.App.1996). When no First Amendment rights are involved, however, we need only examine the statute to determine whether it is impermissibly vague as applied to the appellant's specific conduct. *See Bynum,* 767 S.W.2d at 774. A facial challenge is difficult because the challenger must establish that no set of circumstances exists under which the act would be valid. *See Briggs v. State,* 789 S.W.2d 918, 923 (Tex.Crim.App.1990). Further, where the First Amendment is not implicated, the burden is on the appellant to establish that the statute is unconstitutional as applied to him. *See Bynum,* 767 S.W.2d at 774. If it is unconstitutional to others, that is irrelevant. *See id.* As noted above, threats to harm another are not constitutionally protected speech under the First Amendment. The statute is, therefore, not vague on its face.

In reviewing Webb's vagueness challenge to section 36.06 as applied to his conduct, we do not consider hypothetical situations, but scrutinize the statute only to determine whether it is impermissibly vague as applied to Webb's specific conduct. *See State v. Mendel,* 871 S.W.2d at 908–09.

Webb's main contention on this point is the supposed grammatical impossibility in the statute. Webb also argues out that neither "witness" nor "retaliate" are statutorily defined. A statute is not rendered vague merely because the words or terms are not specifically defined. *See Ahearn v. State,* 588 S.W.2d 327, 338 (Tex. Crim.App.1979). We note that the statute, while not a model of clarity, does not present a grammatical impossibility such that a person of ordinary intelligence cannot understand it. The statute makes it a crime to threaten to harm someone in retaliation for, or on account of, the service of another as a public servant, a prospective witness, or a person who has reported or intends to report a crime. Webb complains that it is technically impossible to retaliate against someone for being a prospective witness. We disagree with Webb's semantics. One can certainly threaten to harm someone on account of their position as a prospective witness or as a person who intends to report a crime. This is precisely what Webb did after Ms. Guziak informed him that she was required by law to report him to CPS. *See* TEX. FAM.CODE ANN. § 261.101(Vernon 1996).

The statutory language is not unconstitutionally vague—it conveys a sufficient warning about the proscribed conduct when measured by a common understanding and practice. *See State v. Sandoval,* 842 S.W.2d 782, 789 (Tex.App.—Corpus Christi 1992, pet. ref'd). The vagueness doctrine is not designed to convert into a constitutional dilemma the practical difficulties in drawing criminal statutes general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited. *See Blanco v.*

*State,* 761 S.W.2d at 41. The statute clearly protects prospective witnesses, and people who intend to report crimes such as Ms. Guziak, from retaliatory threats. We overrule Webb's first and third points of error.

In his fifth point of error, Webb argues the evidence was legally insufficient to support his conviction. When testing the legal sufficiency on appeal, the appellate court determines, after viewing the evidence in the light most favorable to the verdict, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Clewis v. State,* 922 S.W.2d 126, 132 (Tex. Crim.App.1996) (citing *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). When determining whether the evidence is legally sufficient, any inconsistencies in the evidence are resolved in favor of the verdict. *See Hernandez v. State,* 867 S.W.2d 900, 903 (Tex. App.—Texarkana 1993, no pet.). The court of appeals does not review the factfinder's weighing of the evidence. *See Clewis,* 922 S.W.2d at 134. To support the conviction, the jury had to find that Webb intentionally or knowingly intended to harm Ms. Guziak by an unlawful act in retaliation for or on account of her service as a prospective witness, as a person who has reported the occurrence of a crime, or a person who Webb knew intended to report the occurrence of the crime. *See* Tex. Penal Code Ann. § 36.06(a) (Vernon 1994).

On appeal, Webb contends that the sufficiency of evidence at trial must be reviewed without taking into account Ms. Guziak's position as a "person who the actor knows intends to report the occurrence of a crime" because that phrase was omitted from the jury charge. Sufficiency of the evidence, however, should be measured by the elements of the offense as defined by the hypothetically correct jury charge. *See Malik v. State,* 953 S.W.2d 234, 240 (Tex.Crim.App.1997).

The evidence established that appellant knew that Ms. Guziak intended to report him to the authorities, the CPS, for threatening his son with a hunting knife. Webb, therefore, knew that Ms. Guziak would be a prospective witness in any case that might be brought as a result of his actions. An official proceeding need not be initiated before a person may be a prospective witness under section 36.06. *See Morrow v. State,* 862 S.W.2d 612, 615 (Tex.Crim.App.1993). In reviewing the evidence in the light most favorable to the verdict, a rational trier of fact could have found that Webb threatened Ms. Guziak in retaliation for her decision to report him to the CPS. We overrule Webb's fifth point of error.

In his sixth point of error, Webb contends that the evidence was factually insufficient to sustain the conviction. When reviewing a factual sufficiency point, all evidence must be viewed without the prism of "in the light most favorable to the prosecution" and should set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Clewis v. State,* 922 S.W.2d at 129. We should be appropriately deferential to avoid substituting our judgment for that of the jury. *See id.* at 133. Our fact jurisdiction should only be exercised to prevent a manifestly unjust result. *See id.* at 135.

We find the evidence detailed above was factually sufficient for the jury to find that Webb threatened Ms. Guziak because she intended to report his actions to the CPS. We overrule Webb's sixth point of error.

In his seventh point of error, Webb complains that the trial court erred in excluding a packet of business records from the CPS. Webb notes that the records contain an affidavit that authenticated the documents pursuant to former Tex. R.Crim. Evid. 902(10). During trial, Webb's trial counsel called Ms. Johnnie Wilson, a CPS Supervisor, as the first witness for the defense. An unrecorded bench conference then transpired after

which defense counsel called Ms. Wilson as part of a bill of exception. When defense counsel attempted to introduce the business records as an exhibit, the State objected on the grounds of relevance which the court sustained.

██ A trial court is afforded substantial discretion in its decision to admit or exclude evidence. *See Pritchett v. State*, 874 S.W.2d 168, 175 (Tex.App.—Houston [14th Dist.] 1994, pet. ref'd). When evidence is excluded, the burden on appeal is on the defendant to show that the court abused its discretion in excluding the evidence. *See Johnson v. State*, 698 S.W.2d 154, 160 (Tex.Crim.App.1985). A trial court abuses its discretion when its decision is so clearly wrong as to lie outside that zone within which reasonable persons might disagree. *See Foster v. State*, 909 S.W.2d 86, 88 (Tex.App.—Houston [14th Dist.] 1995, pet. ref'd).

██ The trial court sustained the objection on the grounds of relevance. Relevant evidence is evidence that has a tendency to make the existence of a fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. *See* Tex.R. Evid. 401. If the trial court determines the evidence is irrelevant, the evidence is absolutely inadmissible and the trial court has no discretion to admit it. *See Pritchett v. State*, 874 S.W.2d at 173–74. Questions of relevance should be left largely to the trial court and will not be reversed absent an abuse of discretion. *See Moreno v. State*, 858 S.W.2d 453, 463 (Tex.Crim.App.1993). To be included in the expansive definition of relevant evidence, proffered evidence must have influence over a consequential fact. *See Foster v. State*, 909 S.W.2d at 88.

Whether or not the CPS would consider Webb's actions sufficient to warrant removal of his children from his home was not the question at trial. The only issue at trial was whether Webb threatened to harm Ms. Guziak because she told him she was going to report him to the CPS. We find no abuse of discretion in excluding the evidence on the grounds that it was not relevant to the offense charged. Further, even if the trial court should have admitted the CPS records, any error was harmless. *See* Tex.R.App. P. 81 (b)(2). The only issue to be decided was whether or not Webb threatened Ms. Guziak. We overrule Webb's seventh point of error.

██ In his eighth point of error, Webb contends he received ineffective assistance of counsel because his trial counsel: (1) failed to object to the admission of hearsay and elicited hearsay testimony himself; (2) objected to the court's charge at guilt; and (3) failed to request the limiting provisions set out in Rule 105(b) with respect to the CPS records he sought to admit into evidence. Claims of ineffective assistance of counsel are evaluated under the two-part *Strickland* test. *See Garcia v. State*, 887 S.W.2d 862, 880 (Tex.Crim.App.1994). To prevail on an ineffective assistance of counsel point, Webb must show that (1) his counsel's representation was deficient; and (2) the deficient performance was so serious that it prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

██ Under the first prong of the test, competence is presumed and the party asserting ineffective assistance must rebut this presumption by proving by a preponderance of the evidence that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound trial strategy. *See Campos v. State*, 927 S.W.2d 232, 237 (Tex.App.—Waco 1996, no pet.). Specifically, there is a strong presumption that counsel's performance falls within the wide range of professional assistance and that the challenged action constituted sound strategy. *See Davis v. State*, 884 S.W.2d 514, 517 (Tex.App.—Fort Worth 1994, pet. ref'd).

██ Under the second prong of the test, Webb must affirmatively demonstrate

prejudice. *See Garcia v. State,* 887 S.W.2d at 880. To establish prejudice, Webb must show there is a reasonable probability that, but for his counsel's errors, the fact-finder would have had a reasonable doubt concerning guilt. *See id.* Failure to establish prejudice defeats the ineffectiveness claim. *See id.*

On appeal, Webb contends that his trial counsel was ineffective because he elicited hearsay testimony from Ms. Guziak regarding the meaning of the phrase "go to war." Webb also contends that his trial counsel was ineffective for failing to object to this testimony when the prosecutor questioned Ms. Guziak about it on redirect. The record reflects that defense counsel asked Ms. Guziak in what context she interpreted the statement when Webb had used it in the past. Ms. Guziak answered the question without referring to any particular language used by Webb. In any event, a defendant's statement is not hearsay. *See* TEX.R. EVID. 801(e)(2). The failure to object to admissible evidence does not constitute ineffective assistance of counsel. *See Cooper v. State,* 707 S.W.2d 686, 689 (Tex.App.—Houston [1st Dist.] 1986, pet. ref'd). Accordingly, Webb cannot satisfy the first prong of the *Strickland* test with regard to his first claim of ineffective assistance of counsel.

Webb also complains of his trial counsel's objection to the charge which requested for the inclusion of section 36.06 in its entirety. We fail to see how this is unreasonable. Even if it is, Webb cannot establish prejudice under the second prong of the *Strickland* test. Moreover, the portion of the statute that Webb contends would have been harmful to him, had it been included, was not included. We hold that Webb cannot satisfy either prong of the *Strickland* test as to his second allegation of ineffective assistance of counsel.

Finally, Webb contends that his attorney was ineffective for failing to request the CPS records be admitted under the limiting provisions of Rule 105 of the Texas Rules of Evidence. As noted earlier, the trial court already ruled that the records were inadmissible. Defense counsel objected and provided a bill of exception for this court's review. We find no unreasonable action by Webb's counsel regarding his third allegation of ineffective assistance of counsel. We overrule appellant's eighth point of error and affirm the judgment.