Affirmed and Opinion filed April 24, 2003









Affirmed and Opinion filed April 24, 2003.

 

 

 

 

 

 

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO.
14-02-00444-CR

____________

 

EX PARTE MARK STEPHEN NAILOR

 



 

On
Appeal from the County Criminal Court at Law Number Nine

Harris County, Texas

Trial
Court Cause No. 1110734

 



 

O
P I N I O N

In
this appeal from the denial of a post-conviction writ of habeas corpus,
appellant Mark Stephen Nailor claims he was denied effective assistance of
counsel at the guilt-innocence stage of his trial on an assault charge.  We affirm.

                                                                   Background








Appellant
was charged with assaulting his live-in girlfriend, Ella Vines.  On April 23, 2000, Officer Ludwig of the Houston
Police Department responded to a call that an assault had occurred at appellant=s
house.  When Ludwig arrived, he
encountered Vines, who was Acovered in blood@ and was very upset. 
Ludwig testified Vines told him that she had been punched in the face
and that her head had been slammed into the floor.  Vines=s friend, Becky Clevinger, testified Vines called her that same
evening and told her appellant had hit her. 
Officer Chad Deasey, who was called to back up Officer Ludwig, testified
he found appellant walking in a drainage ditch about eight to nine blocks from
the house.  Appellant was apprehended and
brought to the house.  Officer Ludwig
stated appellant later told him Ahe had been framed.@

Vines=s
daughter testified she received a call that appellant had hit her mother and
she was at the hospital.  She further
stated that when she arrived at Vines=s hospital room, the first thing Vines said was Ashe
was tired of being hit.@  The State also
introduced copies of Vines=s hospital records, which included the following notation: A[Patient]
states assaulted by her boyfriend, hit [between] the eyes [with] closed fist.@

Vines
did not appear at trial.  However, her
daughter testified that Vines is scared of appellant and that she Ais
afraid he is going to do something if she came.@  Although appellant=s
counsel moved to strike this testimony, the trial court overruled the
objection.

Appellant
testified on his own behalf.  He stated
that when he came home on April 23, 2000, Vines accused him of having an
affair.  Vines then picked up a brass
eagle and raised it above her head, threatening appellant.  According to appellant, he raised his arms to
protect himself and knocked the eagle out of Vines=s
hands when it apparently struck her. 
Appellant testified Vines then pulled him by the shoulder and he fell on
top of her.  He then got up and left the
house.

Appellant=s
counsel also introduced a handwritten letter, dated April 24, 2000, and signed
by Vines.[1]  The letter reads as follows:

To whom this
may concern

On
April 23, 2000 my girlfriend called HPD because I, Ella Vines, was
injured.  I was angry at Mark
Nailor.  He struck me twice, but I lied,
I actually tripped cutting my head, and ending up on the floor.








Appellant
was convicted of misdemeanor assault and sentenced to 120 days in the Harris
County Jail.  Following his conviction,
appellant retained new counsel and filed a motion for new trial.  In his motion, appellant claimed his trial counsel
was ineffective.  The trial court held a
hearing, at which appellant=s trial counsel testified. 
The court denied appellant=s motion.

On
direct appeal, appellant argued (1) the trial court erred in failing to
instruct the jury on self-defense and (2) appellant=s
trial counsel provided ineffective assistance. 
In an unpublished opinion, the San Antonio Court of Appeals affirmed the
conviction, and the Court of Criminal Appeals refused appellant=s
petition for discretionary review.  See
Nailor v. State, No. 04-00-00642-CR, 2001 WL 840553 (Tex. App.CSan
Antonio July 25, 2001, pet. ref=d) (not designated for publication).  Appellant then filed a writ of habeas corpus,
again asserting his trial counsel=s assistance was ineffective. 
The trial court denied the writ, and this appeal followed.

                                              Effect
of Appellant=s Direct Appeal

We
must first determine whether the disposition of appellant=s
ineffective-assistance claim on direct appeal prevents him from asserting the
same claim in his writ of habeas corpus. 
Generally, an appellant may not raise a claim on habeas corpus that
already has been raised and rejected on direct appeal.  Ex parte Acosta, 672 S.W.2d 470, 472
(Tex. Crim. App. 1984).  However, the
record developed in a direct appeal is often inadequate to evaluate properly an
ineffective-assistance claim.  See
Ex parte Torres, 943 S.W.2d 469, 475 (Tex. Crim. App. 1997).  In Torres, the Court of Criminal
Appeals held that because the record on direct appeal contained insufficient
evidence to evaluate Torres=s ineffective-assistance claim, the rejection of that claim on
direct appeal did not bar re-litigation of the claim on habeas corpus Ato
the extent that [Torres] seeks to gather and introduce additional evidence not
contained in the direct appeal record.@  Id.  We therefore must determine whether the
record on direct appeal in this case was adequate to evaluate appellant=s
ineffective-assistance claim.













In
his application for habeas relief, appellant set forth ten examples of how
trial counsel=s conduct was allegedly deficient.  Nine of the ten alleged deficiencies were
also raised on direct appeal.[2]  The only additional evidence appellant
presented as support for habeas relief is an affidavit from appellant=s
trial counsel, John Brukner.  Of the nine
incidents of ineffective assistance that were raised both in the direct appeal
and in his habeas application, Brukner=s affidavit presents no additional evidence as to four: (1)
counsel=s
offer into evidence of Vines=s letter, which was allegedly inconsistent with appellant=s
defensive theory at trial, (2) counsel=s elicitation of appellant=s previous assault conviction, (3) counsel=s
failure to request a limiting instruction regarding that assault conviction,
and (4) counsel=s failure to present evidence of Vines=s
alleged mental problems and her alleged previous assault on appellant.  Because appellant presented no additional
evidence on these ineffective-assistance allegations outside of the direct
appeal record, these four arguments cannot support his application for habeas
relief.[3]

On
appellant=s remaining arguments, however, Brukner=s
affidavit does present additional evidence that was not in the direct appeal
record.  Although Brukner testified at a
hearing on appellant=s motion for new trial and presumably could have provided the
information that appears in his affidavit at that hearing, we note that the
reporter=s
record of the trial proceedings was not prepared until four months after the
new-trial hearing.  Thus, appellant=s
new counsel did not have that transcript available to him while developing the
record on direct appeal.  See Torres,
943 S.W.2d at 475 (stating that a motion for new trial is often inadequate for
expanding the record on direct appeal in part because the trial record has not
yet been transcribed).  Accordingly, we
review those portions of appellant=s ineffective-assistance claim to which appellant has presented
additional evidence not found in the record on direct appeal.  See id.

                                                Ineffective
Assistance of Counsel








The
standard for determining claims of ineffective assistance under the Sixth
Amendment is well established.  See
Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064
(1984); Hernandez v. State, 726 S.W.2d 53, 57 (Tex. Crim. App.
1986).  To prevail on a claim of
ineffective assistance an appellant must prove by a preponderance of the
evidence that (1) his trial counsel=s representation fell below an objective standard of
reasonableness and (2) a reasonable probability exists that, but for his trial
counsel=s
deficient representation, a different outcome would have resulted.  McFarland v. State, 928 S.W.2d 482,
500  (Tex. Crim. App. 1996).  The review of counsel=s
representation is highly deferential, and we indulge a strong presumption that
counsel=s
conduct falls within a wide range of reasonable representation.  Id. 
Appellant must also affirmatively prove prejudice.  Id. 
Appellant must prove that the errors, judged by the totality of the
representation rather than by isolated instances of error, denied him a fair
trial.  Id.  The appellant=s failure to make the required showing of deficient
representation or sufficient prejudice defeats an ineffective-assistance
claim.  Id.  We begin by examining each of the alleged
errors made by appellant=s trial counsel.

                                                   Counsel=s
Reliance on Self-Defense

Appellant first claims his trial counsel was ineffective
because he relied on self-defense, a theory that was not raised by the
evidence.  Brukner states in his
affidavit that he believed appellant=s version of the events demonstrated that he acted in
self-defense.  Because this was merely a
strategic decision on the part of appellant=s trial counsel, we may not review this decision through the
distorting effects of hindsight.  See
Strickland, 466 U.S. at 689, 104 S. Ct. at 2065.  However, this is exactly what appellant asks
us to do.  Appellant himself argued on
direct appeal that the trial court erred in refusing to instruct the jury on
self-defense and that his trial counsel was deficient for failing to object to
this omission from the jury charge. 
After the court of appeals determined that this defense was unsupported
by the evidence, appellant abruptly changed tack and urged that his counsel was
deficient for arguing a defense that was unsupported by the evidence.  Appellant has not demonstrated that counsel=s
strategic decision to rely on self-defense was unreasonable when evaluated from
his perspective at the time.  See id.

Furthermore,
a review of the record reveals that appellant=s counsel did not rely on self-defense to the exclusion of
other defenses.  Appellant claims that by
advancing a self-defense claim, appellant=s trial counsel Aessentially conceded that appellant had assaulted Vines.@  However, in his opening statement, appellant=s
counsel stated:








[Appellant] backed away and as he was backing away he tried to
knock the eagle out of her hand and as he did his left hand hit it and broke
his little finger.  Accidentally that
eagle struck her wherever the injury was. . . . 
That=s what the defendant will show you and that=s
what we are going to prove, that he acted reasonably in self-defense trying to
avoid injury to himself.

Appellant=s
testimony was consistent with his counsel=s opening statement: 
appellant claimed he was being threatened by Vines and that he never
intended to injure her.  Based on our
review of the record, we cannot say that counsel=s supposed reliance on self-defense constituted deficient
performance.

                                          Opinion
Testimony from Investigating Officer

Appellant
claims that trial counsel erred by failing to object to testimony from the
investigating police officer that, in the officer=s opinion, Vines had not attacked appellant.  However, courts allow police officers to
proffer an opinion when it is based on their training or experience and their
personal knowledge of the event in question. 
See, e.g., Reece v. State, 878 S.W.2d 320, 325
(Tex. App.CHouston [1st Dist.] 1994, no pet.) (allowing an officer to
testify, based upon his training and experience, that a defendant=s
actions were consistent with someone selling cocaine); Williams v. State,
826 S.W.2d 783, 785 (Tex. App.CHouston [14th Dist.] 1992, pet. ref=d)
(using past experience, a police officer was permitted to testify, as either a
lay witness or an expert, that he interpreted the defendant=s
actions to be a drug transaction).  Here,
the record shows that the investigating officer had been a patrol officer for
sixteen years and testified that approximately ten to twenty percent of the
calls he receives are domestic assaults. 
Thus, the officer possesses adequate experience to opine whether
appellant had been attacked.  Trial
counsel=s
failure to object to admissible evidence does not constitute ineffective
assistance of counsel.  Webb v. State,
991 S.W.2d 408, 419 (Tex. App.CHouston [14th Dist.] 1999, pet. ref=d).

                                                                              

 








                                              Testimony
from Complainant=s Daughter

Appellant
next claims his trial counsel failed to object to testimony from Vines=s
daughter that Vines did not testify because she was Ascared@
of appellant.  However, the record shows,
and the appellate court on direct appeal concluded, that appellant=s
trial counsel did make a timely objection by moving to strike this testimony
immediately after it was given. 
Accordingly, appellant has not demonstrated that his trial counsel=s
performance with respect to this objection was deficient. 

                                                 Cross-Examination
about Drug Use

Next,
appellant alleges his trial counsel failed to object to a single question from
the prosecutor on cross-examination regarding appellant=s
drug use.  While appellant was on the
stand, the prosecutor asked him, AIsn=t it true, sir, that you do drugs?@  We agree with appellant that this question
was objectionable, for there was no proper basis for inquiring about appellant=s
previous drug use.  See Tex. R. Evid. 404, 608(b); Hines v.
State, 571 S.W.2d 322, 325 (Tex. Crim. App. [Panel Op.] 1978).  Brukner stated in his affidavit that his
failure to object to such testimony was not strategic, but rather he Awas
not aware that this evidence was inadmissible.@  Accordingly, we find
trial counsel=s failure to object to this question was deficient.

          Cross-Examination
about Assault on Appellant=s Ex-Wife and Related Jury Argument

Appellant
next asserts his trial counsel was deficient for failing to object to a
question from the prosecutor asking whether appellant=s
wife divorced him because he beat her also. 
On direct appeal, the court of appeals held the prosecutor=s
question was proper to show appellant=s intent in response to his asserted defenses of self-defense
and accident.  Nailor, slip op. at
6, 2001 WL 840553, at *3; see Tex.
R. Evid. 404(b).  Thus, the
law-of-the-case doctrine governs this issue, and counsel=s
failure to object cannot serve as a basis for an ineffective-assistance
claim.  See Howlett, 994
S.W.2d at 666B67.








Appellant
further complains that counsel failed to object to a portion of the State=s
argument referring to appellant as a Awife beater@ who Alikes to beat women.@  Appellant claims this
portion of the State=s summation was improper because appellant denied beating his
wife, and there was no evidence in the record that appellant assaulted anyone
other than Vines, who was not his wife. 
However, we conclude that the prosecutor was not referring to appellant=s
alleged assault on his ex-wife, but rather an assault charge against Vines from
approximately eighteen months earlier to which appellant pleaded guilty.[4]  Viewed in context, we cannot say that the
State=s
single reference to appellant as a Awife beater@ constituted improper jury argument.  Accordingly, trial counsel=s
failure to object to this argument cannot constitute ineffective assistance.

                                   Jury
Argument about Complainant=s Failure to Testify








Appellant
claims his trial counsel should have objected to the State=s
argument that appellant threatened to hurt Vines to prevent her from
testifying.  In her summation, the
prosecutor argued that Vines did not testify because appellant told her he
would hurt her if she did.[5]  However, the only evidence in the record was
Vines=s
daughter=s
testimony that Vines was Ascared@ of appellant and that she was Aafraid he is going to do something if she came.@  Contrary to the prosecutor=s
statement during jury argument, the record contains no evidence that appellant
ever threatened to hurt Vines if she testified. 
In his affidavit, Brukner stated that he did not object to this argument
because he believed it was based on the testimony, and only after reviewing the
record did he realize that the daughter did not testify that appellant
threatened Vines.  Accordingly, we find
that counsel=s failure to object to this portion of the State=s
argument was deficient.

                                                              Failure
to Investigate

In
addition to the ten specific examples of allegedly deficient performance,
appellant also suggests his trial counsel did not adequately investigate the
facts of his case.  However, appellant
provides no explanation of where his trial counsel=s
investigation fell short.  Appellant did
not give specific examples of areas his counsel should have investigated better
or did not investigate but should have. 
Accordingly, appellant failed to show that his counsel=s
investigation constituted ineffective assistance.  See Dewberry v. State, 4 S.W.3d
735, 757B58
(Tex. Crim. App. 1999).

To
summarize, appellant has presented evidence of two errors in the performance of
appellant=s trial counsel: (1) counsel=s failure to object to a question about whether appellant used
drugs and (2) counsel=s failure to object to the prosecutor=s
statement during jury argument that appellant had threatened to hurt Vines if
she testified.  We must now determine
whether, based on these two incidents of deficient performance, counsel=s
representation fell below an objective standard of reasonableness.








Brukner
states in his affidavit that there was no strategic reason for his failure to
object to the question regarding appellant=s previous drug use. 
Instead, he claims he did not know this evidence was inadmissible.  Counsel=s admitted lack of familiarity with the rules of evidence
regarding impeachment is particularly troublesome when, as here, the defendant
testified.  With respect to appellant=s
purported threats against Vines to keep her from testifying, Brukner states he
erroneously believed the testimony of Vines=s daughter supported this argument.  While a mistake in recalling specific
testimony is not per se unreasonable, appellant=s counsel should have been familiar with the substance of this
testimony because he moved to strike it immediately after it was given.  The trial court then had the testimony
re-read outside the jury=s presence and overruled the objection.  Furthermore, this was a relatively short
trial, with only five witnesses called by the State.  We conclude that counsel=s
performance in this case fell below an objective standard of reasonableness.

                                                                      Prejudice

Even
if appellant=s trial counsel=s representation fell below a reasonable standard of conduct,
appellant cannot succeed on his ineffective-assistance claim unless he
affirmatively demonstrates a reasonable probability that the outcome in his
case would have been different but for counsel=s deficient performance. 
A reasonable probability is a probability sufficient to undermine
confidence in the outcome.  Strickland,
466 U.S. at 694, 104 S. Ct. at 2068.  To
determine whether counsel=s deficiency resulted in prejudice to the appellant, we focus
upon the weight, nature, and focus of the evidence admitted; the role that
evidence played in the State=s final argument; and the relative role the evidence played in
the outcome of the trial.  See Ex
parte Menchaca, 854 S.W.2d 128, 133 (Tex. Crim. App. 1993).

In
this case, there were no witnesses to the alleged assault.  Appellant does not contest that Vines
suffered an injury as a result of an altercation between the two of them.  The critical question is whether appellant
hit Vines with his hand or whether Vines was injured accidentally when
appellant knocked the brass eagle out of Vines=s hands.  Although Vines
did not testify, the State presented three witnessesCthe
investigating officer, a friend of Vines, and Vines=s
daughterCwho
each testified that, within hours after she was injured, Vines said appellant
had hit her.  In addition, Vines=s
hospital records reflect that Vines stated she was Aassaulted
by her boyfriend, hit [between] the eyes [with] closed fist.@  In response, appellant relied on his own
testimony and the letter apparently recanting Vines=s
claim that appellant hit her.








We
conclude that appellant has failed to establish the prejudicial effect of
appellant=s trial counsel=s deficient performance. 
The jury heard evidence from four separate sources, two of which had no
apparent bias, that Vines said appellant hit her.  The only directly contrary evidence was
presented by appellant, who testified he was defending himself when Vines was
accidently injured.  However, the jury
heard evidence that appellant pleaded guilty to a previous assault against
appellant, which the jury could have weighed against his alleged lack of intent
to injure Vines.  In addition, after the
incident, appellant was apprehended in a drainage ditch several blocks from the
house, walking away from the scene. 
Finally, appellant=s statement to Officer Ludwig that he Ahad
been framed@ seems inconsistent with his claim that Vines=s
injury was an accident.  Given the state
of the evidence, and because the evidence of appellant=s
drug use consisted of a single question and answer that played no role
whatsoever in the State=s jury argument, we cannot say that counsel=s
failure to object so prejudiced appellant as to undermine confidence in the
jury=s
verdict.

Similarly,
we cannot say there is a reasonable probability the outcome would have been
different had counsel properly objected to the State=s
argument regarding appellant=s alleged threats.  We
recognize that courts have found it to be reversible error for a prosecutor to
imply without evidentiary support that a witness has been frightened from the
courtroom by the defendant.  See Thomas
v. State, 519 S.W.2d 430, 431 (Tex. Crim. App. 1975); Person v. State,
706 S.W.2d 153, 154B55 (Tex. App.CHouston [1st Dist.] 1986, no pet.)  Here, however, there was testimony from Vines=s
daughter that Vines was afraid and believed appellant would Ado
something@ if she testified.  The
credibility of Vines=s written statement and the weight, if any, to be given to her
failure to testify both turn on Vines=s subjective belief of a threat from appellant, not the
existence of any actual threat.  Although
the State=s argument that appellant actually threatened Vines might
provide extra credibility to her subjective fear, we conclude it does not add
so much weight to the State=s case that it undermines confidence in the verdict.








                                                                    Conclusion

Our review of the entire record leads us
to conclude that appellant has not established that his trial counsel=s
errors so prejudiced him that he was denied a fair trial.  Accordingly, we overrule his sole point of
error claiming ineffective assistance of counsel, and we affirm the trial court=s
judgment denying appellant relief.

 

 

 

 

/s/            Leslie
Brock Yates

Justice

 

 

 

 

Judgment rendered and Opinion filed April
24, 2003.

Panel consists of Justices Yates,
Anderson, and Frost.

Publish C Tex. R. App. P.
47.2(b).

 

 











[1]  Vines=s signature was authenticated through the testimony of
a notary who signed the letter and testified that he compared the signature on
the letter to Vines=s driver=s
license.





[2]  The alleged
deficiencies that were raised both on direct appeal and in this appeal are as
follows:

 

!          Counsel
failed to object to a police officer=s
opinion that appellant had not been attacked.

!          Counsel
failed to object to the opinion of Vines=s
daughter regarding why Vines did not testify.

!          Counsel
introduced a letter that was inconsistent with the theory of the defense.

!          Counsel
elicited that appellant had been convicted of assaulting Vines.

!          Counsel
failed to object to the prosecutor cross-examining appellant about his prior
drug use.

!          Counsel
failed to object to the prosecutor asking appellant whether he beat his ex-wife
and, despite his denial, arguing during summation that appellant was a
wife-beater who liked to beat women.

!          Counsel
failed to present independent evidence of Vines=s mental
problems and her previous assault on appellant.

!          Counsel
failed to request a limiting instruction that the jury could consider appellant=s assault conviction only to determine his credibility
and not as substantive evidence of guilt.

!          Counsel
failed to object to argument that appellant had threatened to hurt Vines if she
testified.

 

Appellant=s
remaining example of his trial counsel=s
allegedly deficient conduct is that counsel relied on self-defense, which was
not raised by the evidence.





[3]  We also note
that for each of these four examples of allegedly deficient performance, the
San Antonio court concluded that counsel=s
performance did not support a finding of ineffective assistance.  Thus, under the law-of-the-case doctrine,
these allegations would not support appellant=s
ineffective-assistance claim.  See
Howlett v. State, 994 S.W.2d 663, 666B67 (Tex.
Crim. App. 1999).

 

At oral argument, appellant=s counsel suggested the law-of-the-case doctrine does
not apply in this case because the Court of Criminal Appeals refused appellant=s petition for discretionary review on direct
appeal.  However, the court in Howlett
applied the law-of-the-case doctrine even though the defendant=s initial appeal in that case (from the denial of a
pretrial writ of habeas corpus) had not been reviewed by the Court of Criminal
Appeals.  See id.





[4]  The relevant
portion of the State=s argument is as follows:

 

[Appellant]
is in denial that he is an abusive person, that he likes to beat women.  He told you on the stand that he was
convicted before.  AWell, I just pled guilty.@  That=s what he said, isn=t
it?  Why did he say that?  Because he is in denial.  He doesn=t accept
the fact that he is a wife beater.





[5]  The State
argued the following regarding Vines=s
absence (emphasis added):

 

But what
did [Vines=s daughter] tell us about why her mother was not here
today?  Think about it.  What did she say?  She is scared.  He has threatened her.  He said he was going to hurt her if she
came down here today.  Think about
it, ladies and gentlemen, reason and common sense.  A man who has been hitting you for a number
of years tells you he is going to hurt you again if you come down to testify.  Use your reason and common sense.  Are you going to come and testify?  Probably not.