NUMBER 13-07-567-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


MELVIN CARTER, Appellant,


v.



THE STATE OF TEXAS, Appellee.

 


On appeal from the 319th District Court 

of Nueces County, Texas

 


MEMORANDUM OPINION


Before Justices Yañez, Garza, and Vela


Memorandum Opinion by Justice Vela



 

 Appellant, Melvin Carter, was indicted for burglary of a habitation (1) and retaliation. (2) 
The indictment named Erica Jones as the victim of both offenses. The jury acquitted
Carter of the burglary charge, but convicted him of retaliation. After finding Carter had two
prior felony convictions, the trial court sentenced him to fifty years' imprisonment. By three
issues, Carter complains that 1) the charge was fundamentally defective, 2) the evidence
was legally and factually insufficient to support the conviction, and 3) he was prejudiced
by the prosecutor's comments before the jury. We affirm.

I. Background


 On March 25, 2007, Corpus Christi Police Officer Ruben Flores responded to a
disturbance call at an apartment in the Northside Manor Apartments. At the scene, he met
Erica Jones, the person who placed the call. The front door to Jones's apartment had
been kicked in, and Jones had "some bruising" to her right eye and a bruise on her left
arm. She told Officer Flores that her sister's boyfriend, Melvin Carter, had assaulted her.

 On April 1, 2007, Officer Flores was again dispatched to Jones's apartment. Jones
told Officer Flores that she was "in fear for her life" and that "throughout the night she
received threatening phone calls from Melvin Carter." She recorded these calls on her cell
phone's voicemail and played them for Officer Flores. He described the tenor of the calls
as "[v]ery threatening" and testified that when she played the messages for him, she was
"upset and frightened all at the same time." With respect to these calls, the State's
attorney asked Officer Flores:

 Q. Based on your experience and training, did you feel that he [Melvin
Carter] was threatening to kill Erica Jones?


 A. Yes.


 Q. Based on your experience and training, did you believe that he was
threatening to harm her?


 A. Yes.


 Q. And based on your experience and training, and the content of the
tape, did you believe that he was threatening to harm her on account
of her being a witness against him or reporting a crime against him?


 A. Yes.

 Jones testified that on the night of March 25, 2007, Carter knocked on her door at
approximately 11:45 to 11:55 p.m. and asked for his "stuff" and his phone. As Carter
continued to bang on the door, Jones stated that she was going to call the police. Carter
then kicked in the door and began searching every room in the apartment. When Carter
saw Raquel Holt, (3) his ex-girlfriend and Jones's sister, he tried to attack her, but Jones got
between the two and was hit by Carter. Carter then pulled Jones's arm and threw her on
the bed. Carter took $36 from Jones and got his cell phone. When Jones told Carter she
was going to call the police, Carter left the apartment. After he left, she called the police.

 When the State's attorney asked Jones if she had any contact with Carter after the
incident, she said that she had seen him at a pool hall and that he "just started calling. He
was threatening my--threatening to kill my kids." When the State's attorney asked her,
"Was he threatening you also?", she replied, "Yes." At this point, the State's attorney
asked her:

 Q. How did he threaten you?


 A. That he was going to have my kids taken away from me, and that
every time I step outside that a bitch was going to beat my ass.


 Q. Did you--were you afraid of these threats?


 A. Yes.


 Q. Did you think they were threats to kill you or hurt you?

 A. Yes.

 She testified that one of Carter's messages stated that "Me [Jones] and my sister
[Raquel Holt] will be torn up by bitches every time we step outside the house." (4) She
interpreted the phrase "torn up" to mean "I guess get our butts kicked." Another message
from Carter addressed to Jones's sister, contained the following statement: "I've got seven
kids. Well, since you don't give a damn about that, you know what, I'll take hers from her. 
And I'm tired of taking life. Since she wanted to get me locked up for life, I'm going' take
that bitch's kid's life. I'm going to take her kids and put them in the ground." In the next
phone message, Carter stated: "So, if I got to go do 25 to life for sure, just believe me that
bitch is going to do 25 years of suffering. Tough shit." In his final phone message, Carter
addressed Jones by name, stating: "Hey Erica, fuckin' bitch. Said you gonna call the law
on me, fuckin' bitch."

 When the State's attorney asked Jones if she "consider[ed] those calls to be a
threatening and unlawful act against you?", she replied, "Yes." She answered "Yes" when
the State's attorney asked her, "And did you think they were threatening to kill you and/or
your kids?"

 Officer Edward Alvarado heard a recording of the calls that Carter made to Jones. 
When the State's attorney asked Officer Alvarado, "And based on your experience and
training, did they appear to be threatening her life and also in connection with her being a
prospective witness or a witness or a person who filed charges against the defendant?",
he replied, "Yes." Officer Alvarado testified that Jones identified Carter as the person who
made the threatening phone calls.


Appellant's Evidence


 Appellant's mother, Ella Carter, testified that in February or March 2007, appellant
was living with Erica Jones and Raquel Holt. Ella said that in February 2007, Holt was in
jail and asked her to call Jones. When Ella called Jones, Jones told her that she was
"going to do something bad about" appellant because of something he had done. Ella also
stated that Jones had called her and made a threat against appellant. Ella testified that
she had never seen her son follow through with any threats that he has made. She
testified that "I feel like anybody can get mad and say things that they don't mean."

 On cross-examination, when the State's attorney asked Ella, "Isn't it a fact, after
hearing that tape, Melvin Carter was pretty darn angry at Erica Jones for bringing these
charges against him, wasn't he?", she replied, "Yeah, he was."

 Shamair Carter, appellant's sister, testified that "[a]bout late February, March" 2007,
appellant was living at Northside Manor Apartments. She also testified that "around
midnight" on March 25, 2007, she saw appellant at a nightclub. He did not mention
anything about being at Jones's apartment that night. However, appellant did tell Shamair
that he "wanted to get some stuff from" Jones.

 On cross-examination, Shamir testified that Jones "was trying to frame" appellant
and "trying to put these charges on him because her door was broken into."

 Julie Pinon testified that she used to live across from Erica Jones. She said that
around 10:15 p.m. on March 25, 2007, appellant knocked on Jones's door and asked
Jones for his cell phone. She said that Jones told him, "'We don't have your f------ cell
phone.'" She said that after Jones told this to appellant, he left. About thirty minutes later,
another man came to Jones's apartment. Pinon testified she heard this man "banging" and
he "kicked the door in, and all I heard was him run out."

 Appellant did not testify during the guilt-innocence stage.

II. Charge Error


 By issue one, Carter argues that the charge is fundamentally defective because it
did not require the jury to find that he intended to inhibit Jones's service as a witness,
prospective witness, or person who had reported a crime, or that he knew that his threat
was reasonably certain to inhibit such service.

 When evaluating an allegation of charge error, we first determine whether there was
error in the charge. Almanza v. State, 686 S.W.2d 157, 174 (Tex. Crim. App. 1985) (op.
on reh'g) (holding that finding error in the charge begins--not ends--the inquiry); see also
Ex parte Smith, 185 S.W.3d 455, 464 (Tex. Crim. App. 2006). If so, "the next step is to
make an evidentiary review . . . as well as a review of any other part of the record as a
whole which may illuminate the actual, not just theoretical, harm to the accused." Almanza,
686 S.W.2d at 174 (op. on reh'g).

A. The Offense of Retaliation

 Section 36.06 of the penal code provides that a person can commit the offense of
"Obstruction or Retaliation" in either of two ways:

 (a) A person commits an offense if he intentionally or knowingly harms or
threatens to harm another by an unlawful act:


 (1) in retaliation for or on account of the service or status of another
as a:


 (A) public servant, witness, prospective witness, or informant; or


 (B) person who has reported or who the actor knows intends
to report the occurrence of a crime; or 


 (2) to prevent or delay the service of another as a:


 (A) public servant, witness, prospective witness, or informant;
or

 

 (B) person who has reported or who the actor knows intends
to report the occurrence of a crime.


Tex. Penal Code Ann. § 36.06 (Vernon Supp. 2008) (emphasis added). Subsection (a)(1)
prohibits harming or threatening to harm another in retaliation for his service, Ortiz v. State,
93 S.W.3d 79, 87 (Tex. Crim. App. 2002) (emphasis added), and subsection (a)(2)
prohibits harming or threatening to harm another to prevent or delay his service. Id.
(emphasis added).

 In this case, the application portion of the charge provided, in relevant part, that the
jury could convict Carter of retaliation if he intentionally or knowingly "threaten[ed] to harm
another, to-wit: ERICA JONES, by an unlawful act, to-wit: threatening to kill ERICA
JONES, in retaliation for or on account of ERICA JONES as a witness or a prospective
witness or a person who has reported the occurrence of a crime, . . . ." Thus, the court
charged the jury under section 36.06(a)(1)(A) and (B). See Tex. Penal Code Ann. §
36.06(a)(1)(A), (B) (Vernon Supp. 2008). Accordingly, the State was not required to prove
that Carter threatened to harm Jones to either "prevent or delay," or inhibit her service. 

B. Culpable Mental State

 By this same issue, Carter argues the offense of retaliation is a result-oriented crime
and that the focus is not on whether a threatening statement was made; rather, the focus
is on whether the statement was made with intent to inhibit the alleged victim's services as
a witness, prospective witness, or person who had reported a crime, or with knowledge that
it was reasonably certain to inhibit such service.

 The court of criminal appeals has recognized that section 6.03 of the penal code
delineates three "conduct elements" that may be involved in an offense: (1) the nature of
the conduct; (2) the result of the conduct; and (3) the circumstances surrounding the
conduct. McQueen v. State, 781 S.W.2d 600, 603 (Tex. Crim. App. 1989); see Tex. Penal
Code Ann. § 6.03(a), (b) (Vernon 2003). An offense may contain any one or more of these
"conduct elements" that alone, or in combination form, the overall behavior that our
legislature has intended to criminalize, and it is those essential "conduct elements" to which
a culpable mental state must apply. McQueen, 781 S.W.2d at 603.

 A charge that defines intentionally or knowingly as those terms relate to the nature
of the conduct at issue is error when the offense charged is a result-oriented offense. 
Herrera v. State, 915 S.W.2d 94, 98 (Tex. App.-San Antonio 1996, no pet.). In Herrera,
the appellate court, after examining section 36.06(a)(2) of the penal code, concluded that: 
"[O]bstruction is in fact a result oriented offense," and "[t]he focus is on whether the
conduct is done with the intent to effect the result specified in the statute." Id. at 98, see
In re B.P.H., 83 S.W.3d 400, 407 (Tex. App.-Fort Worth 2002, no pet.) (under penal code
section 36.06(a)(1)(A), retaliation is a result-oriented offense and focus is on whether
conduct is done with intent to effect result specified in statute).

 We have stated that when an offense is only a "result" or a "nature of the conduct"
type of offense, the trial court should submit statutory definitions of "intentionally" or
"knowingly" that are limited to the respective culpable mental states required. (5) Saldivar v.
State, 783 S.W.2d 265, 268 (Tex. App.-Corpus Christi 1989, no pet.). Here, the jury was
allowed to find Carter guilty if it found he possessed the mens rea with respect to any of
the three conduct elements. (6) See Tex. Penal Code Ann. § 6.03(a), (b) (Vernon 2003). 
Therefore, the trial court erred because it did not limit the statutory definitions of
"intentionally" or "knowingly" to the respective culpable mental state required for a result-oriented offense. See Cook v. State, 884 S.W.2d 485, 491 (Tex. Crim. App. 1994) ("It is
error for a trial judge to not limit the definitions of the culpable mental states as they relate
to the conduct elements involved in the particular offense.").

C. Harm Analysis

 When, as in this case, an accused fails to object to the charge, "he will obtain a
reversal only if the error is so egregious and created such harm that he 'has not had a fair
and impartial trial'--in short 'egregious harm.'" Almanza, 686 S.W.2d at 171. The error
must "'go to the very basis of the case,'" "deprive the accused of a 'valuable right,'" or
"'vitally affect his defensive theory.'" Id. at 172. The degree of harm, sufficiently serious
to be called "egregious," is present whenever a reviewing court finds the case for conviction
or punishment was actually made clearly and significantly more persuasive by the error. 
Saunders v. State, 817 S.W.2d 688, 692 (Tex. Crim. App. 1991). Egregious harm is a
difficult standard to prove and must be determined on a case-by-case basis. Ellison v.
State, 86 S.W.3d 226, 227 (Tex. Crim. App. 2002). The actual degree of harm is assayed
in light of the entire jury charge, the state of the evidence, including the contested issues
and weight of probative evidence, the argument of counsel, and any other relevant
information revealed by the record of the trial as a whole. Almanza, 686 S.W.2d at 171.

 1. The Charge

 Paragraph five of the charge correctly defined the offense of retaliation. (7) See Tex.
Penal Code Ann. § 36.06(a)(1)(A), (B) (Vernon Supp. 2008). The application paragraph
properly instructed the jury that it was required to find beyond a reasonable doubt that
Carter intentionally or knowingly threatened to harm Jones by threatening to kill her in
retaliation for or on account of her status as a witness, or a prospective witness, or a
person who has reported the occurrence of a crime. See id. "Where the application
paragraph correctly instructs the jury, an error in the abstract instruction is not egregious." 
Medina v. State, 7 S.W.3d 633, 640 (Tex. Crim. App. 1999) (even when State conceded
trial court erred in defining knowingly with respect to nature of conduct and not to result of
conduct, no egregious harm when application paragraph correctly instructs the jury).

 Furthermore, "[a] central purpose of the [retaliation] statute is to encourage a certain
class of citizens to perform vital public duties without fear of retribution." Doyle v. State,
661 S.W.2d 726, 729 (Tex. Crim. App. 1983) (per curiam). "Those public duties may
include reporting criminal activities, testifying in official proceedings, or cooperating with the
government in a criminal investigation." Morrow v. State, 862 S.W.2d 612, 615 (Tex. Crim.
App. 1993). "Section 36.06 [of the penal code] seeks to encourage such participation
without fear of retribution." Id. In this case, the application paragraph alleged that Carter
threatened to kill Jones in retaliation for or on account of her status as a witness, or a
prospective witness, or a person who has reported the occurrence of a crime. Accordingly,
the jury's focus was properly directed to the result of Carter's conduct and not to the
conduct itself.

 2. State of the Evidence and Contested Issues

 Jones testified that Carter assaulted her, kicked in her door, and entered her
apartment. He left when she told him she was going to call the police. After she reported
this to the police, Carter threatened to kill her. This evidence satisfied the requirements
of section 36.06(a)(1)(A) and (B). Furthermore, while the issue of whether Carter acted
intentionally or knowingly was part of the State's required proof, this was not a contested
issue and consequently Carter could not be egregiously harmed by the definitions of the
intentional and knowing state of mind. See Saldivar, 783 S.W.2d at 268 ("Where no
defense is presented which would directly affect an assessment of mental culpability, there
is no harm in submitting erroneous definitions of 'intentionally' and 'knowingly.'"). 

 3. Arguments of Counsel

 During the State's closing argument at the guilt-innocence stage, the prosecutor did
not tell the jury that in order to convict Carter of retaliation, it needed to find he intended
to inhibit Jones's service as a witness, prospective witness, or person who had reported
a crime, or that he knew that his threat was reasonably certain to inhibit such service. 

 4. Other Relevant Information

 Carter's defensive strategy was to undermine Jones's credibility by adducing
evidence that she had planned to do something bad to him and that she was lying about
him kicking in her door and assaulting her. The jury obviously resolved the credibility issue
in Jones's favor.

 We conclude that the charge error did not affect the very basis of the case, deprive
Carter of a valuable right, vitally affect a defensive theory, or make the case for conviction
or punishment clearly and significantly more persuasive. See Saunders, 817 S.W.2d at
692; Almanza, 686 S.W.2d at 172. We hold, therefore, that the charge as submitted did
not result in egregious harm to Carter. Issue one is overruled.

III. Sufficiency of the Evidence


 In issue two, Carter challenges the legal and factual sufficiency of the evidence to
support the conviction. In reviewing the legal sufficiency of the evidence to support a
conviction, we view all the evidence in the light most favorable to the verdict in order to
determine whether any rational trier of fact could have found the essential elements of the
crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979);
Hampton v. State, 165 S.W.3d 691, 693 (Tex. Crim. App. 2005). This standard gives full
play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the
evidence, and to draw reasonable inferences from basic facts to ultimate facts. Jackson,
443 U.S. at 319. The trier of fact is the sole judge of the weight and credibility of the
evidence. Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); Margraves v. State, 34
S.W.3d 912, 919 (Tex. Crim. App. 2000). Thus, when performing a legal-sufficiency
review, we may not re-evaluate the weight and credibility of the evidence and substitute our
judgment for that of the fact-finder. Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim. App.
1999). We must resolve any inconsistencies in the evidence in favor of the judgment. 
Curry v. State, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

 In reviewing a factual sufficiency claim, we review the evidence in a neutral light
rather than the light most favorable to the verdict. Neal v. State, 256 S.W.3d 264, 275
(Tex. Crim. App. 2008); Roberts v. State, 220 S.W.3d 521, 524 (Tex. Crim. App. 2007)
(citing Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000)). Evidence is factually
insufficient if the evidence supporting the verdict is so weak that the verdict seems clearly
wrong and manifestly unjust, or if the supporting evidence is outweighed by the great
weight and preponderance of the contrary evidence so as to render the verdict clearly
wrong and manifestly unjust. Neal, 256 S.W.3d at 275; Roberts, 220 S.W.3d at 524 (citing
Watson v. State, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006)). We do not reverse for
factual insufficiency if the greater weight and preponderance of the evidence actually
favors conviction. Neal, 256 S.W.3d at 275; Roberts, 220 S.W.3d at 524 (citing Watson,
204 S.W.3d at 417).

 A person commits the offense of retaliation if he (1) intentionally or knowingly (2)
harms or threatens to harm another by an unlawful act (3) in retaliation for or on account
of the service or status of another (4) as either a public servant, witness, prospective
witness or informant, or as a person who has reported or who the actor knows intends to
report the occurrence of a crime. Tex. Penal Code Ann. § 36.06(a)(1)(A), (B) (Vernon
Supp. 2008); Stewart v. State, 137 S.W.3d 184, 188 (Tex. App.-Houston [1st Dist.] 2004,
pet. ref'd).

 Retaliatory intent may be inferred from the accused's acts, words, or conduct. Dues
v. State, 634 S.W.2d 304, 305 (Tex. Crim. App. 1982). The statute does not require that
an accused intend to carry out the threat, take any affirmative steps to carry out the threat,
or communicate the threat directly to the witness. Lebleu v. State, 192 S.W.3d 205, 209,
211 (Tex. App.-Houston [14th Dist.] 2006, pet. ref'd); see Doyle, 661 S.W.2d at 728. 
Furthermore, the statute does not require that the threatened retaliatory harm be imminent. 
In re B.P.H., 83 S.W.3d at 407; In re B.M., 1 S.W.3d 204, 207 (Tex. App.-Tyler 1999, no
pet.); Coward v. State, 931 S.W.2d 386, 389 (Tex. App.-Houston [14th Dist.] 1996, no
pet.); Puckett v. State, 801 S.W.2d 188, 194 (Tex. App.-Houston [14th Dist.] 1990, pet.
ref'd).

 As alleged in the application paragraph, the State had to prove that Jones was a
"witness or a prospective witness or a person who has reported the occurrence of a crime." 
See Tex. Penal Code Ann. § 36.06(a)(1)(A), (B) (Vernon Supp. 2008).

 A "prospective witness" is one who may testify in an official proceeding. Morrow,
862 S.W.2d at 614. A person who witnesses an offense, but who has not yet testified in
a trial involving that offense, is also a prospective witness. Solomon v. State, 830 S.W.2d
636, 637 (Tex. App.-Texarkana 1992, pet. ref'd). Whether a person is a prospective
witness must be judged from the standpoint of the one who retaliates. Id. However, an
official proceeding need not be initiated in order for a person to be a prospective witness. 
Morrow, 862 S.W.2d at 615. For example, when a witness to an auto accident gives his
or her account of the accident to the police for use in the police report, that person
becomes a prospective witness. Rudolph v. State, 70 S.W.3d 177, 179 (Tex. App.-San
Antonio 2001, no pet.)

 In this case, a rational jury could have determined the following from the evidence: 
(1) Melvin Carter assaulted Jones; (2) when Jones told Carter she was going to call the
police, he left the apartment; (3) after Carter left the apartment, Jones called the police; (4)
Jones told Officer Flores that Carter assaulted Jones and kicked in her door; (5) after
Jones reported the incident to the police, Jones received threatening phone calls from
Carter and told Officer Flores she was "in fear for her life;" (6) Jones thought they were
threats to kill her or hurt her; (7) in one of these calls, Carter told Jones: "Hey Erica,
[expletive deleted]. Said you gonna call the law on me, [expletive deleted];" and (8) Officer
Flores heard these calls and testified he felt that Carter was threatening to kill Jones, and
he believed Carter was threatening to harm her on account of her being a witness against
Carter or reporting a crime against him.

 Carter provided controverting evidence showing that: (1) at the time of the incident,
he and his sister were at a nightclub; (2) Carter was not the man that kicked in Jones's
door; (3) prior to the incident, Jones told Carter's mother that she was going to do
something bad to Carter; and (4) shortly after the incident, Jones saw Carter at a pool hall
and that nothing happened between them.

 When viewing the evidence in the light most favorable to the verdict, a rational trier
of fact could have accepted the State's evidence as true and inferred from Carter's acts,
words, and conduct that he intentionally or knowingly threatened to harm Jones by an
unlawful act, that is, he threatened to kill her in retaliation for or on account of her status
as a prospective witness or a person who had reported the occurrence of a crime--Carter's
assault against Jones. Thus, the evidence is legally sufficient to support Carter's retaliation
conviction beyond a reasonable doubt. See Rudolph, 70 S.W.3d at 179 (holding that a
defendant's threatening phone calls to auto-accident witness were retaliation).

 Viewing the same evidence in a neutral light, we conclude the evidence was not so
weak that the jury's determination was clearly wrong and manifestly unjust, or that the
conflicting evidence presented by Carter so greatly outweighed the evidence supporting
the conviction that the jury's determination was manifestly unjust. See Watson, 204
S.W.3d at 414-15, 417; Johnson, 23 S.W.3d at 11. See Rudolph, 70 S.W.3d at 178
(holding accused's threatening phone calls to auto accident witness was retaliation); Webb
v. State, 991 S.W.2d 408, 417 (Tex. App.-Houston [14th Dist.] 1999, pet. ref'd) (holding
that an accused's threat to a woman who intended to report him to CPS was retaliation). 
Furthermore, a reasonable trier of fact could infer from Jones's testimony that Carter
thought Jones could report what he had done and testify against him. See Webb, 991
S.W.2d at 417 (holding that a victim was prospective witness when an accused's threats
demonstrated that he knew victim intended to report a crime that he committed). 
Therefore, we conclude the evidence was factually sufficient to support the conviction. 
Issue two is overruled.

IV. Prosecutorial Misconduct


 In issue three, Carter asserts that he was prejudiced by the prosecutor's comments
before the jury. During the guilt-innocence stage, appellant's sister, Shamair Carter,
testified she and appellant were at a nightclub at the time Jones claimed appellant kicked
in her door and assaulted her. On cross-examination, the State's attorney questioned her
about why she did not provide this information to the grand jury. The State's attorney
asked her:

 Q. Melvin Carter was indicted by the grand jury on this case--I can't see
the date exactly but it looks like April. Did you ever go down to the
grand jury and tell them, "Hey, don't indict my brother for burglary. He
was with me that night"?


 A. I was unaware.


 Q. Tell me that again. You were unaware that your brother was charged
with this?


 A. I was unaware of things that I could have done. . . .


 * * *


 Now that you're telling me all of this, I wish that I would have. 
Now that I know that I--what I can do, if ever--if ever I need to for
next time, now I know all those names--I


 Q. The next time you have to provide an alibi for your brother?


 A. No. For anything. If anybody is being accused or, you know, for any
type of situation. If anybody is being falsely accused, that I'm aware
of, now I know of the people that I can contact.


Applicable Law & Analysis


 An appellate court reviews allegations of prosecutorial misconduct on a case-by-case basis. Stahl v. State, 749 S.W.2d 826, 830 (Tex. Crim. App. 1988). The review is
not limited to only the facts of each case, but also the probable effect on the jurors' minds. 
Hodge v. State, 488 S.W.2d 779, 781-82 (Tex. Crim. App. 1973). Courts have held a
prosecutor's conduct inappropriate when his or her actions deliberately violate an express
court order, and when misconduct is "so blatant as to border on being contumacious." 
Stahl, 749 S.W.2d at 831. To trigger reversal, the question must be obviously harmful to
the defendant. Ransom v. State, 789 S.W.2d 572, 585 (Tex. Crim. App. 1989); Gonzales
v. State, 685 S.W.2d 47, 49 (Tex. Crim. App. 1985) (appellate courts rarely reverse a
conviction due to an improper prosecutorial question). Additionally, it must be of "such a
character so as to suggest the impermissibility of withdrawing the impression produced." 
Huffman v. State, 746 S.W.2d 212, 218 (Tex. Crim. App. 1988).

 To preserve error for prosecutorial misconduct, the appellant must: (1) make a
timely and specific objection; (2) request an instruction to disregard the matter improperly
placed before the jury; and (3) move for mistrial. See Tex. R. App. P. 33.1; Cook v. State,
858 S.W.2d 467, 473 (Tex. Crim. App. 1993); see also Martinez v. State, 22 S.W.3d 504,
507 (Tex. Crim. App. 2000) (stating that a timely objection gives the trial court or the
opposing party the opportunity to correct the error or remove the basis for the objection);
see also Huffman, 746 S.W.2d at 218 (holding that a defendant must object that the
prosecutor's question was "clearly calculated to inflame the minds of the jury and [was] of
such a character so as to suggest the impermissibility of withdrawing the impression
produced"). Here, defense counsel did not object to the complained-of question. Counsel
made no request for an instruction, nor did she move for a mistrial. Thus, in accordance
with Texas Rule of Appellate Procedure 33.1, the error, if any, is not preserved for appeal.

 Assuming, arguendo, that counsel had properly preserved error, a prosecutor is
traditionally given great leeway in posing questions and making reasonable deductions
from the evidence. Gaddis v. State, 753 S.W.2d 396, 398 (Tex. Crim. App. 1988). In this
case, although the prosecutor's question--"The next time you have to provide an alibi for
your brother?"--may not have been a direct deduction from the evidence, there is nothing
to suggest that the prosecutor's line of questioning was clearly calculated to inflame the
minds of the jury or that it was of such a character so as to suggest the impermissibility of
withdrawing the impression produced. A prompt instruction to disregard will generally cure
an error associated with an improper question and answer. Ovalle v. State, 13 S.W.3d
774, 783 (Tex. Crim. App. 2000). Having reviewed the record, we do not believe the
question was so inflammatory or of such a character that, had Carter requested an
instruction to disregard, the instruction would not have cured any prejudicial effect.

 Because Carter failed to preserve error, or alternatively, the prosecutor's question
was not so egregious that it could not have been cured by an instruction from the trial
court, we overrule the third issue.

 The trial court's judgment is affirmed.


 ROSE VELA 

 Justice


Do not publish.

Tex. R. App. P. 47.2(b).


Memorandum Opinion delivered and

filed this 20th day of November, 2008.
1. See Tex. Penal Code Ann. § 30.02 (Vernon 2003).
2. See Tex. Penal Code Ann. § 36.06(a)(1)(A), (B) (Vernon Supp. 2008). Retaliation is a third-degree
felony. Id. § 36.06(c).
3. Raquel Holt did not testify.
4. This is a reference to a call which stated, in relevant part, "Every time you keep steppin' out the house
that bitch going to tear your ass up. You and your sisters put those punk-ass charges on me. . . . You all
[unintelligible] going to get your ass tore up every time I step out the house."
5. Similarly, when an offense is both a result-and a nature-oriented offense, with respect to the intent
or the knowledge required, the trial court should submit complete statutory definitions of "intentional" and
"knowingly" so the jury can consider both the result of the offender's conduct and the nature of his or her
conduct. Saldivar v. State, 783 S.W.2d 265, 267-68 (Tex. App.-Corpus Christi 1989, no pet.). When an
offense is not clearly categorized with respect to the conduct elements required, the trial court may submit the
full statutory definitions of "intentionally" and "knowingly" because both definitions allow the jury to consider
the nature of the offender's conduct or the results of his conduct. Baker v. State, 94 S.W.2d 684 (Tex.
App.-Eastland 2002, no pet.); Murray v. State, 804 S.W.2d 278, 281 (Tex. App.-Fort Worth 1991, pet. ref'd).
6. The charge defined "intentionally" and "knowingly" as follows:


 A person acts intentionally, or with intent, with respect to the nature of his conduct
or to a result of his conduct when it is his conscious objective or desire to engage in the
conduct or cause the result.


 A person acts knowingly, or with knowledge, with respect to the nature of his conduct
or to circumstances surrounding his conduct when he is aware of the nature of his conduct
or that the circumstances exists [sic]. A person acts knowingly, or with knowledge, with
respect to the result of his conduct when he is aware that his conduct is reasonably certain
to cause the result.
7. Paragraph five instructed the jury:


 A person commits the offense of retaliation if he intentionally or knowingly harms or
threatens to harm another by an unlawful act; in retaliation for or on account of the service
or status of another as a public servant, witness, or prospective witness, or a person who has
reported or who the defendant knows intends to report the occurrence of a crime.


See Tex. Penal Code Ann. § 36.06(a)(1)(A) (Vernon Supp. 2008).