

# IN THE
# TENTH COURT OF APPEALS

No. 10-21-00183-CR
No. 10-21-00184-CR
No. 10-21-00185-CR
No. 10-21-00186-CR

**JOHN KELLY FORBES,**

**Appellant**

 **v.**

**THE STATE OF TEXAS,**

**Appellee**

From the 443rd District Court
Ellis County, Texas
Trial Court Nos. 45248CR, 45249CR, 45250CR, & 45251CR

## MEMORANDUM OPINION

In appellate cause numbers 10-21-00183-CR, 10-21-00184-CR, 10-21-00185-CR, and 10-21-00186-CR, appellant, John Kelly Forbes, challenges his convictions for aggravated assault of a public servant, evading arrest with a vehicle, tampering with evidence, and possession of a controlled substance—methamphetamine—in an amount greater than one gram, but less than four grams, with intent to deliver. *See* TEX. PENAL CODE ANN. §§

22.02, 37.09, 38.04; *see also* TEX. HEALTH & SAFETY CODE ANN. § 481.112. We affirm the trial court's judgments in appellate cause numbers 10-21-00183-CR, 10-21-00185-CR, and 10-21-00186-CR. We affirm as modified the trial court's judgment in appellate cause number 10-21-00184-CR.

## Background

On May 4, 2019, Officer Austin Rollins of the Waxahachie Police Department was on routine patrol near downtown Waxahachie, Texas, when he observed a red Nissan Altima driven by Forbes make a "really quick right turn" without using his signal. Believing that the driver of the red Nissan Altima intended to avoid detection, Officer Rollins followed the vehicle to the parking lot of a closed business. Upon further inspection, Officer Rollins noticed that the temporary paper license plate on the red Nissan Altima was expired. Officer Rollins activated the lights on his police cruiser, but Forbes immediately pulled away and activated his hazard lights. Officer Rollins believed that Forbes was about to pull over, but as Forbes continued to pass other safe places to stop, Officer Rollins realized that Forbes was evading and called for backup.

Forbes evaded Officer Rollins and other officers for nearly twenty minutes at low speeds. Officer Rollins characterized Forbes's driving during this time as "pretty unsafe" given that Forbes regularly turned without signaling, ran stop signs, and drove into oncoming traffic during his escape attempt. Forbes drove into the downtown area where

a Cinco de Mayo festival had drawn large numbers of people. He also drove close to two officers who were directing traffic for the Scarborough Faire festival.

As he approached Interstate 35, Forbes continued to evade. While Forbes traveled on Interstate 35 away from town, Officer Rollins observed Forbes throw a plastic bag out of the window that contained what appeared to be crystal methamphetamine. Waxahachie Police Officer Danny Knight retrieved the plastic bag and confirmed that the plastic bag contained a large piece of crystal methamphetamine.

Later, Forbes u-turned on the highway and began driving back towards town. Police decided to use spike strips to deflate the tires on Forbes's vehicle. Forbes was able to drive around the first attempted use of the spike strips. Corporal Andrew Gonzales and Officer Andrew Smith, both of the Waxahachie Police Department, deployed another set of spike strips further down the road. Forbes swerved onto the access road to avoid these spike strips. Believing that he could safely do so, Corporal Gonzales deployed spike strips on the access road as Forbes drove towards him. Thereafter, Corporal Gonzales ran up an embankment on the side of the road. Forbes drove up the embankment toward Corporal Gonzales and hit him.

Officer Rollins testified that Corporal Gonzales was wearing his police uniform at the time and that Forbes never activated his brakes the entire time he was driving towards Corporal Gonzales. Furthermore, just before he was struck, Corporal Gonzales heard "a loud increase of the engines, like somebody was basically smashing down on the

accelerator." Just prior to being struck, Corporal Gonzales leapt in the air to avoid being dragged under the car. Corporal Gonzales hit the windshield of Forbes's vehicle with his head, breaking the windshield and embedding glass fragments in his forehead and scalp that his wife was still removing weeks after Corporal Gonzales was discharged from the hospital. Corporal Gonzales testified that he had bruising all over his body, lacerations to his head and back, and back and arm pain. He further noted that he had strong vertigo that kept him from standing and turning his head at first. And at the time of trial, Corporal Gonzales had lingering back pain and regular migraine headaches that were triggered by loud noises and bright lights. These migraines made it difficult for him to attend his children's events.

After striking Corporal Gonzales, Forbes continued driving up the embankment into a nearby hotel parking lot. Eventually, police were able to stop and arrest Forbes. Officer Rollins found a baggie full of smaller baggies, commonly used for packaging, selling, and transporting drugs, immediately outside Forbes's vehicle as if he had just dropped it.

Regarding the collision with Corporal Gonzales, Corporal Rodney Guthrie, also of the Waxahachie Police Department, noted that Forbes "had every opportunity to stop" before hitting Corporal Gonzales, but he chose to continue driving up the embankment. Aric Hagy, a trooper with the Texas Department of Public Safety, conducted an accident reconstruction. He was unable to determine Forbes's speed because Forbes never applied

his brakes and there were no skid marks at the scene of the collision. Trooper Hagy opined that Forbes's driving was: "At a minimum, reckless." Officer Rollins, Corporal Guthrie, and Officer Smith all testified that they observed Forbes's driving during the escape and that Forbes's driving could cause death or serious bodily injury.

Forbes was charged in four separate indictments with aggravated assault of a public servant, evading arrest with a vehicle, tampering with evidence, and unlawful possession of a controlled substance—methamphetamine—in an amount greater than one gram, but less than four grams, with intent to deliver. The cases were consolidated and tried jointly. Forbes pleaded not guilty before a jury to the charge of aggravated assault of a public servant and was convicted. Forbes pleaded guilty to the jury on the remaining three charges. The jury sentenced Forbes to thirty years in prison for aggravated assault of a public servant; ten years in prison for evading arrest, with a deadly weapon finding; five years in prison for tampering with evidence; and fifteen years in prison for possession of a controlled substance with intent to deliver. The sentences were ordered to run concurrently. Forbes filed a motion for new trial, which was overruled by operation of law. *See* TEX. R. APP. P. 21.8(c). The trial court certified Forbes's right to appeal in each case, and these appeals followed.

**Appellate Cause Number 10-21-00183-CR: Aggravated Assault of a Public Servant**

In two issues in appellate cause number 10-21-00183-CR, Forbes challenges the sufficiency of the evidence supporting his conviction for aggravated assault of a public

servant and contends that the trial court erred by admitting Facebook posts that he allegedly made.

SUFFICIENCY OF THE EVIDENCE

The Court of Criminal Appeals has expressed our standard of review of a sufficiency issue as follows:

> When addressing a challenge to the sufficiency of the evidence, we consider whether, after viewing all of the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017). This standard requires the appellate court to defer "to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319, 99 S. Ct. 2781. We may not re-weigh the evidence or substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). The court conducting a sufficiency review must not engage in a "divide and conquer" strategy but must consider the cumulative force of all the evidence. *Villa*, 514 S.W.3d at 232. Although juries may not speculate about the meaning of facts or evidence, juries are permitted to draw any reasonable inferences from the facts so long as each inference is supported by the evidence presented at trial. *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016) (citing *Jackson*, 443 U.S. at 319, 99 S. Ct. 2781); *see also Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). We presume that the factfinder resolved any conflicting inferences from the evidence in favor of the verdict, and we defer to that resolution. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). This is because the jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). Direct evidence and circumstantial evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13.

We measure whether the evidence presented at trial was sufficient to support a conviction by comparing it to "the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*; *see also Daugherty v. State*, 387 S.W.3d 654, 665 (Tex. Crim. App. 2013). The "law as authorized by the indictment" includes the statutory elements of the offense and those elements as modified by the indictment. *Daugherty*, 387 S.W.3d at 665.

*Zuniga v. State*, 551 S.W.3d 729, 732-33 (Tex. Crim. App. 2018).

A person commits assault if the person intentionally, knowingly, or recklessly causes bodily injury to another. TEX. PENAL CODE ANN. § 22.01(a)(1). A person commits aggravated assault on a public servant if assault is committed as defined in Section 22.01, and the person uses or exhibits a deadly weapon during the commission of the assault against a person whom the actor knows is a public servant while the public servant is lawfully discharging an official duty. *Id.* § 22.02(a)(1), (b)(2)(B).

As applicable to the offense of aggravated assault on a public servant in this case, a hypothetically correct jury charge would ask whether Forbes: (1) intentionally, knowingly, or recklessly; (2) caused bodily injury to Corporal Gonzales, a public servant lawfully discharging his duty; and (3) used or exhibited a deadly weapon. On appeal, Forbes only challenges the element of culpable mental state, arguing that the evidence showed he made every effort to avoid the collision but was unable to.

The court's charge provided the following definitions for "intentionally," "knowingly," and "recklessly":

> A person acts intentionally, or with intent, with respect to the result of his conduct when it is his conscious objective or desire to cause the result.

> A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

> A person acts recklessly, or is reckless, with respect to the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all circumstances, as viewed from the actor's standpoint.

*See* TEX. PENAL CODE ANN. § 6.03(a)-(c). Intent may be inferred from circumstantial evidence, such as the acts, words, and conduct of the defendant. *See Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004); *see also Hart v. State*, 89 S.W.3d 61, 65 (Tex. Crim. App. 2002).

The jury could have concluded that Forbes acted intentionally, knowingly, or recklessly based on testimony that it was apparent the direction Corporal Gonzales was running, and that Forbes continued to drive in the direction of Corporal Gonzales. Indeed, Officer Rollins stated that Forbes "just veer[ed] right for [Corporal Gonzales] and never hit the brakes." Corporal Gonzales testified that he heard Forbes "basically smashing down on the accelerator" just prior to hitting him. The testimony also

demonstrated that Forbes had no difficulty in maneuvering his car around spike strips, construction cones, and other vehicles. Furthermore, Trooper Hagy conducted an accident reconstruction and noted that he was unable to determine Forbes's speed because Forbes never applied his brakes and that Forbes's driving was: "At a minimum, reckless."

In addition, the evidence also showed that Forbes continued driving up the embankment even after striking Corporal Gonzales. *See Dobbins v. State*, 228 S.W.3d 761, 765 (Tex. App.—Houston [14th Dist.] 2007, pet. dism'd) ("[A]ppellant's conduct after driving the vehicle into Vest also constitutes evidence of his intent to threaten Vest and his knowledge that his actions would have that result."); *see also Figueroa v. State*, 250 S.W.3d 490, 503 (Tex. App.—Austin 2008, pet. ref'd) (noting that evidence of attempting to flee is admissible and may indicate a consciousness of guilt). Forbes only stopped to avoid striking another vehicle and because Corporal Guthrie blocked him in with his own vehicle. Forbes's efforts to flee after striking Corporal Gonzales further establishes his intent.

Despite the foregoing, Forbes argues that the dashcam videos and security footage from a nearby hotel admitted into evidence show that he attempted to avoid hitting Corporal Gonzales. We do not believe that the videos clearly support Forbes's contention. Nevertheless, the jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *See Montgomery v. State*,

369 S.W.3d 188, 192 (Tex. Crim. App. 2012); *see also Green v. State*, 607 S.W.3d 147, 152 (Tex. App.—Houston [14th Dist.] 2020, no pet.). Furthermore, the jury may choose to believe or disbelieves all or part of a witness's testimony, and, to the extent conflicts in the evidence exist, we presume the jury resolved any conflicts in the evidence in favor of the prevailing party. *See Marshall v. State*, 479 S.W.3d 840, 845 (Tex. Crim. App. 2016) ("We defer to the jury's finding when the record provides a conflict in the evidence."); *see also Green*, 607 S.W.3d at 152.

For the foregoing reasons, we hold that the evidence was sufficient to support Forbes's conviction for aggravated assault of a public servant. *See* TEX. PENAL CODE ANN. § 22.02(a)(1), (b)(2)(B); *see also Zuniga*, 551 S.W.3d at 732-33. Accordingly, we overrule Forbes's first issue in appellate cause number 10-21-00183-CR.

ADMISSION OF THE FACEBOOK POSTS

In his second issue, Forbes argues that the trial court erred by admitting Facebook posts he allegedly made. Specifically, Forbes complains that the Facebook posts were not authenticated properly; the probative value of the posts is substantially outweighed by the danger of unfair prejudice; the posts were not relevant; and the posts were a "back-door" violation of his Fifth Amendment right to not testify.

**Standard of Review**

We review a trial court's admission or exclusion of evidence for an abuse of discretion. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). A trial court

abuses it discretion if it acts arbitrarily or unreasonably, without reference to any guiding rules or principles. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990). When considering a trial court's decision to admit or exclude evidence, we will not reverse the trial court's ruling unless it falls outside the "zone of reasonable disagreement." *Id.* at 391; *see Manning v. State*, 114 S.W.3d 922, 926 (Tex. Crim. App. 2003).

**Relevance**

First, Forbes argues that the Facebook posts were irrelevant because they did not show he intended to harm a peace officer. Any evidence that is both material and probative is relevant. *See* TEX. R. EVID. 401. All relevant evidence is admissible unless otherwise excepted by the Constitution, statute, or other rules. *See id.* at R. 402. Evidence is relevant if it has any tendency to make more probable or less probable the existence of a consequential fact. *Id.* at R. 401; *see Moses v. State*, 105 S.W.3d 622, 626 (Tex. Crim. App. 2003). "Questions of relevance should be left largely to the trial court and will not be reversed absent an abuse of discretion." *Webb v. State*, 991 S.W.2d 408, 418 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (citing *Moreno v. State*, 858 S.W.2d 453, 463 (Tex. Crim. App. 1993)).

While recuperating from his injuries, Corporal Gonzales looked up Forbes's Facebook page to learn more about him. Corporal Gonzales found three Facebook posts that were "kind of astonishing" to him how they reflected "just the thoughts of the person."

The first of the three posts, State's Exhibit 10, shows a profile picture of a person Corporal Gonzales identified as Forbes and the name "John Forbes." The post shows a repost of a photograph with the words on a black background stating: "'Fuck it'—my final thought before making most decisions."

The second post, State's Exhibit 11, shows the same name and profile picture with the statement, "Ain't that the truth," and another photograph of words on a black background stating: "Tomorrow's a new day and another chance to fuck things up just a little bit differently." Corporal Gonzales testified that State's Exhibit 10 and 11 were posted on the day of the offense and before the offense was committed.

The third post, State's Exhibit 12, offered by the State for authentication purposes, includes a post signed by Forbes's wife dated May 18, 2019, noting that Forbes was in jail and listing his inmate number so that he could be sent mail.

At trial, Forbes opened the door regarding his mental state when he cross-examined police officers about the inability to read his mind to know his intent during the offense. In particular, Forbes questioned Trooper Hagy extensively about what Forbes was thinking during the offense and asserted that Trooper Hagy was "just guessing" about Forbes's mental state. Through repeated cross-examination, Forbes put his mental state at issue.

The State was entitled to rebut Forbes's defensive issue of lack of mens rea by introducing other evidence. The aforementioned Facebook posts, specifically State's

Exhibits 10 and 11, reflected Forbes's mental state on the day of the offense. Indeed, the posts described Forbes's approach to decision-making the day of the offense, which was "[f]uck it." This approach to decision-making with little regard to consequences supported, at least, the reckless mental state of the charged offense. *See* TEX. PENAL CODE ANN. § 6.03(c). The third Facebook post, State's Exhibit 12, was relevant for authentication. We therefore conclude that the trial court did not abuse its discretion by concluding that the three Facebook posts were relevant.

**Authentication**

Next, Forbes asserts that the Facebook posts were not properly authenticated. Texas Rule of Evidence 901 governs the authentication requirements for the admissibility of evidence and requires the proponent to produce sufficient evidence to support a finding that the evidence is what the proponent claims it is. TEX. R. EVID. 901(a). Whether the proponent has crossed this threshold is a preliminary determination for the trial court. *Id.* at R. 104(a); *Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012); *Ryder v. State*, 581 S.W.3d 439, 454 (Tex. App.—Houston [14th Dist.] 2019, no pet.). Rule 901 provides a non-exclusive list of methods for authentication of evidence, including witness testimony, appearance, contents, substance, or other distinctive characteristics taken in conjunction with circumstances. TEX. R. EVID. 901(b); *Ryder*, 581 S.W.3d at 454.

The proponent of the evidence does not need to rule out all possibilities inconsistent with authenticity, or prove beyond any doubt that the evidence is what it

purports to be. *Campbell v. State*, 382 S.W.3d 545, 549 (Tex. App.—Austin 2012, no pet.). The proponent is not required to prove anything. *Dominguez v. State*, 441 S.W.3d 652, 659 (Tex. App.—Houston [1st Dist.] 2014, no pet.). Rather, the rule requires only a showing that satisfies the trial court that the matter in question is what the proponent claims; once that showing is made, the exhibit is admissible. *Id.*; *see Tienda*, 358 S.W.3d at 638-40 (noting that electronic communications may be authenticated by a variety of means and that "the best or most appropriate method for authenticating electronic evidence will often depend upon the nature of the evidence and the circumstances of the particular case"); *Druery v. State*, 225 S.W.3d 491, 502 (Tex. Crim. App. 2002) (stating that the trial court does not abuse its discretion by admitting evidence where it reasonably believes that a reasonable juror could find that the evidence has been authenticated or identified).

We cannot say that the trial court abused its discretion by concluding that the Facebook posts were authenticated properly. This is because the posts were marked with photographs identified as Forbes, which jurors could compare to Forbes's appearance in open court. One of the posts also included a reference to Forbes being in jail and his identification number. Further, Corporal Gonzales testified that he had knowledge of this "life event" to help him authenticate the page. This was sufficient to connect the Facebook posts to Forbes. And to the extent that Forbes argued that the posts were made by some unknown person in a conspiracy against him, such was a question of weight for the jury to resolve. *See Tienda*, 358 S.W.3d at 645-46.

**Probative Value vs. Danger of Unfair Prejudice**

Forbes also contends that the probative value of the Facebook posts was substantially outweighed by the danger of unfair prejudice. *See* TEX. R. EVID. 403. Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. *Id.* Rule 403 carries a presumption that relevant evidence will be more probative than prejudicial and favors the admission of relevant evidence. *Gallo v. State*, 239 S.W.3d 757, 762 (Tex. Crim. App. 2007). Unfair prejudice does not mean the evidence injures the opponent's case—"the central point of offering evidence." *Rogers v. State*, 991 S.W.2d 263, 266 (Tex. Crim. App. 1999). "Rather[,] it refers to 'an undue tendency to suggest a decision on an improper basis, commonly, though not necessarily, an emotional one.'" *Id.* (quoting *Cohn v. State*, 849 S.W.2d 817, 820 (Tex. Crim. App. 1993)).

Although not limited to the following enumerated factors, courts should balance the following under a Rule 403 analysis: (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest a decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

*Gigliobianco v. State*, 210 S.W.3d 637, 641-42 (Tex. Crim. App. 2006). The trial court is presumed to have conducted a proper balancing test if it overrules a Rule 403 objection, regardless of whether the test was conducted on the record. *See Williams v. State*, 958 S.W.2d 186, 195 (Tex. Crim. App. 1995).

Complaining about the trial court's Rule 403 ruling, Forbes specifically argues that the Facebook posts were not relevant to prove his intent; that the State did not need the evidence to prove any elements of the charged offenses; and that the posts were improper character evidence. We disagree.

The Facebook posts were probative of Forbes's mental state on the day in question. Further, Forbes does not adequately explain how this evidence had the potential to impress the jury in some irrational, yet indelible way. Forbes does not argue, nor does the record demonstrate, that an inordinate amount of time was needed to develop this evidence. And finally, as explained earlier, the State needed this evidence to rebut Forbes's defensive theory raised through cross-examination of the State's witnesses regarding Forbes's mental state. This evidence was not solely character-conformity evidence. *See* TEX. R. EVID. 404(b) (noting that evidence of other crimes, wrongs, or acts is admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident); *see also De la Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009) ("Rule 404(b) is a rule of inclusion rather than exclusion. The rule excludes only that evidence that is offered (or will be

used) solely for the purpose of proving bad character and hence conduct in conformity with that bad character. . . . One well-established rationale for admitting evidence of uncharged misconduct is to rebut a defensive issue that negates one of the elements of the offense." (internal quotations & citations omitted)).

Rule 403 "envisions exclusion of [relevant] evidence only when there is a 'clear disparity between the degree of prejudice of the offered evidence and its probative value.'" *Hammer v. State*, 296 S.W.3d 555, 568 (Tex. Crim. App. 2009) (quoting *Conner v. State*, 67 S.W.3d 192, 202 (Tex. Crim. App. 2001)). We cannot say that there is a "clear disparity" between the danger of unfair prejudice posed by the Facebook posts and their probative value. *See id.*; *see also Conner*, 67 S.W.3d at 202. Thus, we cannot conclude that the trial court abused its discretion by admitting the evidence over Forbes's Rule 403 objection. *See* TEX. R. EVID. 403; *Gigliobianco*, 210 S.W.3d at 641-42.

**The Fifth Amendment of the United States Constitution**

Finally, Forbes complains that the admission of the Facebook posts was a "back-door" violation of the Fifth Amendment of the United States Constitution because it could force him to testify to explain what the posts meant. *See* U.S. CONST. amend. V. As the State contends, Forbes "offers no law demonstrating that a defendant's personal statement to friends or the public at large, with no police involvement, can be a Fifth Amendment violation solely because the defendant may wish to explain it." Indeed, the United States Supreme Court has stated that "[v]olunteered statements of any kind are

not barred by the Fifth Amendment." *Miranda v. Arizona*, 384 U.S. 436, 478, 86 S. Ct. 1602, 1630, 16 L. Ed. 2d 694 (1969).  We therefore cannot conclude that the trial court abused its discretion by admitting State's Exhibits 10, 11, and 12.  Accordingly, we overrule Forbes's second issue in appellate cause number 10-21-00183-CR.

**Appellate Cause Number 10-21-00184-CR:  Evading Arrest With a Vehicle**

In two issues in appellate cause number 10-21-00184-CR, Forbes contends that the trial court erred by admitting Facebook posts that he allegedly made, and that the judgment should be reformed to reflect a deadly-weapon finding.

Forbes's argument pertaining to the admission of the Facebook posts in his first issue mirrors the argument made in his second issue in appellate cause number 10-21-00183-CR.  Because we have rejected this same argument in appellate cause number 10-21-00183-CR, we overrule Forbes's first issue in appellate cause number 10-21-00184-CR.

In his second issue, Forbes asserts that the judgment pertaining to his conviction for evading arrest with a vehicle should be reformed to reflect a deadly-weapon finding. An appellate court has authority to reform a judgment to make the record speak the truth when the matter has been called to its attention by any source.  *See* TEX. R. APP. P. 43.2(b); *see also Bigley v. State*, 865 S.W.2d 26, 27-28 (Tex. Crim. App. 1993); *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992).

Here, the record reflects that the jury found that Forbes used a deadly weapon while evading arrest.  The trial court then pronounced the deadly-weapon finding for

this offense. However, the judgment corresponding with this offense includes a "N/A" in the box for "Findings on Deadly Weapon." Because the judgment does not reflect the deadly-weapon finding pronounced in open court, we modify the judgment to reflect that a deadly-weapon finding was indeed made. We sustain Forbes's second issue in appellate cause number 10-21-00184-CR.

## Appellate Cause Number 10-21-00185-CR: Tampering With Evidence

In one issue in appellate cause number 10-21-00185-CR, Forbes argues that the trial court erred by admitting Facebook posts that he allegedly made. Forbes's argument in this issue mirrors the argument made in his second issue in appellate cause number 10-21-00183-CR. Because we have rejected this same argument in appellate cause number 10-21-00183-CR, we overrule Forbes's sole issue in appellate cause number 10-21-00185-CR.

## Appellate Cause Number 10-21-00186-CR: Possession of a Controlled Substance With Intent to Deliver

In one issue in appellate cause number 10-21-00186-CR, Forbes asserts that the trial court erred by admitting Facebook posts that he allegedly made. Forbes's argument in this issue mirrors the argument made in his second issue in appellate cause number 10-21-00183-CR. Because we have rejected this same argument in appellate cause number 10-21-00183-CR, we overrule Forbes's sole issue in appellate cause number 10-21-00186-CR.

**Conclusion**

Based on the foregoing, we modify the judgment in appellate cause number 10-21-00184-CR to reflect a deadly-weapon finding was made. We affirm as modified the trial court's judgment in appellate cause number 10-21-00184-CR. Furthermore, we affirm the trial court's judgments in appellate cause numbers 10-21-00183-CR, 10-21-00185-CR, and 10-21-00186-CR.

STEVE SMITH
Justice

Before Chief Justice Gray,
    Justice Johnson,
    and Justice Smith
(Chief Justice Gray concurs in the Court's judgments. A separate opinion will not be issued.)
Appeals affirmed and affirmed as modified
Opinion delivered and filed August 3, 2022
Do not publish
[CRPM]

